IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY, | ) ) ) | Civ. No. 14-00281 HG-RLP |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANOVA FOOD, LLC; ANOVA FOOD, INC. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| ANOVA FOOD, INC.; ANOVA FOOD, LLC, | ) ) | |
| | ) | |
| Counter-Claimants, | ) ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE HANOVER INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Counter-Defendants. | ) ) | |
| _____ | ) | |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT/COUNTER-CLAIMANT ANOVA FOOD, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 64)**

Plaintiffs/Counter-Defendants The Hanover Insurance Company and Massachusetts Bay Insurance Company ("Hanover Companies") have filed a declaratory judgment action against Defendants/Counter-Claimants Anova Food, LLC and Anova Food, Inc.

1

Defendant/Counter-Claimant Anova Food, LLC ("Anova LLC") filed a Counterclaim against the Hanover Companies for breach of contract and bad faith relating to the insurance contracts at issue.

The declaratory judgment action seeks to determine the Hanover Companies' duty to defend and duty to indemnify pursuant to insurance policies that were issued to Anova Holding USA, LLC. The duties are sought in connection with an underlying lawsuit that has since been settled in the United States District Court for the District of Hawaii, <u>Kowalski v. Anova Food, LLC, et al.</u>, Civ. No. 11-00795HG-RLP ("Underlying Lawsuit").

The Underlying Lawsuit was brought against Anova Food, LLC and Anova Food, Inc. for patent infringement and false advertising.  The Hanover Companies tendered a defense and provided counsel for Anova Food, LLC in the Underlying Lawsuit. The Underlying Lawsuit was settled and ordered dismissed as to all claims and all parties, and was closed on April 23, 2015.

**The Summary Judgment Motion Before the Court:**

Anova LLC has filed the Motion before the Court for Partial Summary Judgment.  Anova LLC argues the Hanover Companies owed it a duty to defend in the Underlying Lawsuit and seeks summary judgment on the issue of their duty to defend in Counts I, II, and III of the First Amended Complaint.

2

Anova LLC asserts that Florida law applies to the interpretation of the insurance policies at issue and claims that pursuant to Florida law, it was owed a duty to defend.

Anova LLC also seeks summary judgment on the issue of liability as stated in Count I of its Counterclaim for Breach of Contract.  Anova LLC asserts that the Hanover Companies breached the insurance policies by failing to pay for all of Anova LLC's attorneys' fees and defense costs incurred in defending the Underlying Lawsuit.

The Court finds that Florida law applies to the interpretation of the insurance policies at issue and Anova LLC was owed a duty to defend by the Hanover Companies.

The Court finds that Anova LLC is not entitled to pre-tender attorneys' fees.

There are genuine issues of material fact that preclude entering summary judgment as to the Counterclaim for breach of contract concerning payment of Anova LLC's post-tender attorneys' fees.

Defendant/Counter-Claimant Anova Food, LLC's MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUTNERCLAIM DEFENDANTS' DUTY TO DEFEND (ECF No. 64) is **GRANTED, IN PART, AND DENIED, IN PART**.

## PROCEDURAL HISTORY

On June 19, 2014, the Hanover Companies filed a Complaint. (ECF No. 1).

On October 2, 2014, Anova LLC and Anova Food, Inc. filed an Answer and Counterclaim. (ECF No. 14).

On May 29, 2015, the Hanover Insurance Companies filed a First Amended Complaint. (ECF No. 39).

On June 12, 2015, Anova LLC filed a Counterclaim in Response to the First Amended Complaint. (ECF No. 40-1).

On December 23, 2015, Anova LLC filed DEFENDANT ANOVA FOOD LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DUTY TO DEFEND. (ECF No. 64). Anova LLC also filed a MEMORANDUM IN SUPPORT OF ITS MOTION (ECF No. 65), a CONCISE STATEMENT OF MATERIAL FACTS (ECF No. 74), and a Declaration of Darren Zobrist. (ECF No. 75).

On January 20, 2016, the Hanover Insurance Companies filed PLAINTIFFS THE HANOVER INSURANCE COMPANY AND MASSACHUSETTS BAY INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO DEFENDANT ANOVA FOOD, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DUTY TO DEFEND. (ECF No. 79). They also filed PLAINTIFFS THE HANOVER INSURANCE COMPANY AND MASSACHUSETTS BAY INSURANCE COMPANY'S RESPONSE TO THE CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF ANOVA LLC'S MOTION FOR

4

PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DUTY TO DEFEND.  (ECF No. 80).

On February 11, 2016, Anova LLC filed DEFENDANT ANOVA FOOD LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DUTY TO DEFEND.  (ECF No. 83).  Anova LLC also filed the SECOND DECLARATION OF DARREN ZOBRIST IN SUPPORT OF DEFENDANT ANOVA FOOD, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DUTY TO DEFEND.  (ECF No. 84).

On February 23, 2016, the Parties submitted a Proposed Stipulation to the Court to continue the hearing date for Anova LLC's Motion for Partial Summary Judgment.  (ECF No. 88).  The Proposed Stipulation was denied.  (Id.)

On February 29, 2016, the Court held a hearing on Anova LLC's Motion for Partial Summary Judgment.  (ECF No. 94).


## BACKGROUND


**ANOVA FOOD, LLC**

Defendant/Counter-Claimant Anova Food, LLC ("Anova LLC") is a company that sells and markets fish.  (Declaration of Darren Zobrist, Chief Executive Officer of Anova LLC ("Zobrist Decl.") at ¶ 2, ECF No. 75).

Anova LLC is a Virginia limited liability company with its principal place of business in Tampa, Florida.  (<u>Id.</u>)

**ANOVA FOOD, INC.**

Anova Food, Inc. is a co-defendant in this case but is not a party to the Motion for Partial Summary Judgment filed by Anova LLC.  Anova Food, Inc. ceased operations in May 2010, before the start of the insurance policies at issue in this case.  (Zobrist Decl. at ¶ 2, ECF No. 75).

Anova Food, Inc. had separate insurers and separate counsel from Anova LLC in the Underlying Lawsuit.  (<u>Id.</u> at ¶¶ 8-9).  Anova Food, Inc. reached a separate settlement from Anova LLC in the Underlying Lawsuit.  (<u>Id.</u> at ¶¶ 8-10).

**INSURANCE POLICIES AT ISSUE**

The Declaratory Judgment action filed by the Plaintiffs/Counterclaim-Defendants The Hanover Insurance Company and Massachusetts Bay Insurance Company (hereinafter "Hanover Companies")[1] concerns four insurance policies that covered Anova LLC.

---

[1] The Massachusetts Bay Insurance Company is wholly owned by The Hanover Insurance Company.  (Plaintiff Massachusetts Bay Insurance Company's Corporate Disclosure Statement, ECF No. 4). The Parties in their briefing refer to Plaintiffs/Counter-Defendants The Hanover Insurance Company and Massachusetts Bay Insurance Company collectively as "Hanover".

The Parties agree that the Hanover Companies were responsible for four insurance policies issued to Anova Holding USA, LLC, which insured Anova LLC.  (Def.'s Concise Statement of Facts at ¶ 3, ECF No. 74; Pla.'s Concise Statement of Facts in Opposition at ¶ 3, ECF No. 80).

The four insurance policies were issued and delivered to Anova LLC at its principal place of business in Florida.  (Zobrist Decl. at ¶ 6, ECF No. 75).

Each of the four policies provided coverage for claims of "personal and advertising injury."  Each of the policies included a number of standard exclusions for personal and advertising injuries.  The policies also stated that insurance did not apply to personal and advertising injury "arising out of" infringement or violation of copyright, patent, trademark, trade secret, or other intellectual property rights or laws.

The Hanover Companies do not seek to apply the exclusion for injuries "arising out of" infringement of intellectual property to the issue of their duty to defend, but the Hanover Companies maintain that they may seek to apply the exclusion to the issues of indemnity and reimbursement.  (Pla.'s Memo. in Opp. at pp. 28-30, ECF No. 79).

**The OneBeacon Policies**

The first two policies were a primary commercial liability policy and an umbrella commercial liability policy that were issued by OneBeacon Insurance Company to Anova Holding USA, LLC, Policy No. 713-00-91-51-0002, effective from July 1, 2010 to July 1, 2011 ("OneBeacon Policies"). (OneBeacon Policies attached as Exhibit B to Pla.'s First Amended Complaint, ECF Nos. 39-2—4).

The policies included coverage for claims of "personal and advertising injury." (OneBeacon Primary Policy at p. 9, Coverage B Personal and Advertising Injury Liability, ECF No. 39-3; OneBeacon Umbrella Policy at p. 22, Coverage B. Personal and Advertising Injury Liability, ECF No. 39-4).

The Hanover Companies state that they purchased the renewal rights to the OneBeacon Policies and assumed the adjustment and payment of claims within the OneBeacon Policies. (Pla.'s Memo. in Opp. at p. 4, n.1, ECF No. 79).

**The Massachusetts Bay Policy**

The third policy at issue is a primary commercial liability policy issued by Massachusetts Bay Insurance Company to Anova Holding USA, LLC, Policy No. LDY 9192618 00, effective July 1, 2011 to July 1, 2012 and renewed through and including July 11, 2014 ("The Massachusetts Bay Policy"). (Massachusetts Bay Insurance Company Policy attached as Ex. C to Pla.'s Amended

8

Complaint, ECF No. 39-5).  The policy also covered claims of "personal and advertising injury."  (Massachusetts Bay Policy at p. 36, Coverage B Personal and Advertising Injury Liability, ECF No. 39-5).

### The Hanover Policy

The final policy at issue is a commercial umbrella liability policy issued by The Hanover Insurance Company to Anova Holding USA, LLC, Policy No. UHY 9124369 00, effective from July 1, 2011 to July 1, 2012 ("Hanover Policy").  (The Hanover Bay Insurance Company Policy attached as Ex. D to Pla.'s Amended Complaint, ECF No. 39-6).  The Hanover Policy, just as the first three policies, included coverage for claims of "personal and advertising injury."  (Hanover Policy at p. 14, Coverage B - Personal and Advertising Injury Liability, ECF No. 39-6).

**THE UNDERLYING LAWSUIT**

The coverage dispute arises from allegations in a patent infringement and false advertising case that was filed in the United States District Court for the District of Hawaii.

On December 29, 2011, the Underlying Lawsuit, <u>William R. Kowalski; Hawaii International Seafood, Inc. v. Anova Food, LLC; Anova Food, Inc., et al.</u>, Civ. No. 11-00795HG-RLP, was filed against Anova Food, LLC and Anova Food, Inc.

The First Amended Complaint in <u>Kowalski</u> alleged patent infringement claims and false advertising claims, asserting that "Defendants [Anova Food, Inc. and Anova Food, LLC] falsely, misleadingly, deceptively advertised, promoted, and sold fish." (<u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-0079HG-RLP, First Amended Complaint filed Jan. 2, 2012, ECF No. 6; attached as Ex. A to Pla.'s Amended Complaint, ECF No. 39-1).

The allegations in the <u>Kowalski</u> First Amended Complaint covered a period of time between 1999 and 2012, a portion of which time Anova LLC was covered by the Hanover Companies' insurance policies. (<u>Id.</u> at ¶¶ 8-9, 16).

Anova LLC began operations in May 2010 after it acquired certain assets from Anova Food, Inc., which had ceased operations. (Zobrist Decl. at ¶ 2, ECF No. 75). The Motion before the Court pertains only to the duty to defend Anova LLC and the Order does not include the issue of a duty to defend Anova Food, Inc. in the Underlying Lawsuit.

Anova LLC was covered by the insurance policies at issue beginning on July 1, 2010. (<u>See</u> Policies attached as Exs. B, C, D to Pla.'s First Amended Complaint, ECF Nos. 39-2—6).

After the Underlying Lawsuit was filed on December 29, 2011, Anova LLC retained the Zobrist law firm, located in Charlottesville, Virginia, to defend it in the Underlying Suit. (Zobrist Decl. at ¶ 5, ECF No. 75).

Anova LLC also retained Attorney Gary Grimmer as local counsel in Hawaii to represent it in the proceedings before the U.S. District Court for the District of Hawaii.  (Id.)

On October 12, 2012, more than nine months after the Underlying Lawsuit was filed, Anova LLC requested the Hanover Companies provide it a defense to the Underlying Suit pursuant to the relevant insurance policies.  (Zobrist Decl. at ¶ 6, ECF No. 75).

A few days later the Hanover Companies acknowledged receipt of the request for a defense by letter dated October 15, 2012. (Letter from Hanover Insurance Group to counsel for Anova LLC dated October 15, 2012, attached as Ex. 2 to Pla.'s Concise Statement of Fact, ECF No. 80-3).

On December 4, 2012, the Hanover Companies agreed to provide a defense to Anova LLC, but included a reservation of rights statement.  (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 4, 2012, to counsel for Anova LLC, attached as Ex. 3 to Pla.'s Concise Statement of Facts, ECF No. 80-4).

A week later, on December 11, 2012, the Zobrist law firm filed its appearance as pro hac vice counsel of record in the Underlying Lawsuit. (Kowalski v. Anova Food, LLC, et al., 11-cv-00795HG-RLP, Order Granting Application to Appear Pro Hac Vice, issued on December 11, 2012, ECF No. 131).

11

On December 13, 2012, the Hanover Companies sent a letter to Anova LLC supplementing its reservation of rights position. (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 13, 2012, attached as Ex. 4 to Zobrist Decl. at pp. 3-14, ECF No. 75-4).

The December 13, 2012 letter stated:

> Massachusetts Bay Insurance Company and Hanover Insurance Company ... **will agree to defend Anova Food., LLC. pursuant to the following reservation of rights**. Current defense counsel is Gary Grimmer[.]  I have agreed to assign the defense of this matter to Mr. Grimmer if he will agree to work for the rates Hanover customarily pays for this kind of legal work in the region and will also agree to comply with Hanover's Litigation Guidelines. (emphasis added).

> (Ex. 4 attached to Zobrist Decl. at p. 3, ECF No. 75-4).

The December 13, 2012 letter stated that it was the Hanover Companies' opinion that they "have no obligation to pay for or reimburse for any fees and costs incurred by Anova Food, LLC prior to the time the matter was tendered to us for defense on 10-12-2012." (Id. at p. 3).  The Hanover Companies indicated in the letter that the duty to defend pertained to the Massachusetts Bay Policy. (Id. at pp. 13-14).

The Hanover Companies' December 13, 2012 letter also contained a statement that it believed that Florida law applied to the interpretation of the insurance policies at issue:

> Punitive damages are requested by the Plaintiffs. Massachusetts Bay Insurance Company is placing Anova Food, LLC [on notice] that it will not agree to

12

indemnify Anova Food, LLC for any judgment for punitive damages.  **It is our opinion that Florida law applies in this coverage situation and directly assessed punitive damages are not insurable in Florida**.  Further, although directly assessed punitive damages are insurable in Hawaii coverage for those damages will not be implied.  Haw. Rev. Stat. §431:10-240.

(Id. at p. 13) (emphasis added).

Anova LLC was represented by Attorney Gary Grimmer and the Zobrist law firm in the Underlying Lawsuit as counsel of record until December 2013.

According to Anova LLC, the Hanover Companies paid at least $284,624 in attorneys fees to the Zobrist law firm.  (Zobrist Decl. at ¶ 14, ECF No. 75).  The record is unclear as to the purpose of the payment and for what period of time the fees covered.  Anova LLC contends that the Zobrist law firm is owed significantly more attorneys' fees.  (Id.)

On December 10, 2013, the Hanover Companies sent a letter to Anova LLC to inform it that they had decided to change counsel in the Underlying Lawsuit.  The December 10, 2013 letter stated:

Hanover is transferring the defense of this matter on behalf of Anova Food, LLC to attorneys Wesley H.H. Ching and Leighton K. Chong...Hanover will continue to defend Anova Food, LLC under its previously issued reservation of rights and will be fulfilling that obligation by the retention of attorneys Ching and Chong.

(Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 10, 2013, to counsel for Anova LLC, attached as Ex. 5 to Zobrist Decl. at pp. 4-5, ECF No. 75-5).

13

Also in the December 10, 2013 Letter, the Hanover Companies stated:

> You have indicated a desire for the Zobrist Law Group to stay involved in the defense of the claims asserted in part because of the firm's history with intellectual property issues involving Anova Foods, LLC. Anova Foods, LLC has the right to retain separate counsel if it so chooses. However, the continued involvement of the Zobrist Law Group will need to be funded directly by Anova Foods, LLC. Hanover's defense obligation, as set forth in the previous reservation of rights letter, will be fulfilled by the retention of and payment to attorneys Ching and Chong as set forth herein.

(<u>Id.</u> at p. 5).

On March 3, 2015, a settlement of the Underlying Lawsuit was held on the record. (<u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP, Minutes of Settlement on the Record dated March 3, 2015, ECF No. 633).

On April 23, 2015, the Court issued a Stipulation and Order for Dismissal with Prejudice as to all claims and parties. (<u>Id.</u> at ECF No. 635).

**DISPUTE CONCERNING ATTORNEYS' FEES FOR THE ZOBRIST LAW FIRM**

Anova LLC asserts that on December 13, 2012, the Hanover Companies agreed to hire both Attorney Gary Grimmer and the Zobrist law firm as counsel to defend Anova LLC in the Underlying Lawsuit. (Zobrist Decl. at ¶ 6, ECF No. 75).

The Hanover Companies claim that on December 13, 2012, they only agreed to hire Attorney Gary Grimmer. (Letter from Hanover

Regional Liability Adjuster Stephen E. Colville, dated December 13, 2012, attached as Ex. 4 to Zobrist Decl. at pp. 3-14, ECF No. 75-4).  The Hanover Companies contend they never agreed to hire the Zobrist law firm.  (Pla.'s Concise Statement of Facts at ¶ 10, ECF No. 80).

The Hanover Companies' position conflicts with evidence that they paid at least a portion of the Zobrist law firm's attorneys' fees.  The record reflects that the Hanover Companies paid the Zobrist law firm $284,624 in attorneys' fees, despite the Hanover Companies' claim that they did not agree to hire the Zobrist law firm.  (Zobrist Decl. at ¶ 14, ECF No. 75).

Anova LLC seeks to recoup attorneys' fees for the Zobrist law firm for two separate periods of time.

First, Anova LLC seeks "pre-tender fees," attorneys' fees incurred before October 12, 2012, the date Anova LLC requested a defense from the Hanover Companies.

Second, Anova LLC seeks "post-tender fees," fees incurred after informing the Hanover Companies of their need to provide a defense on October 12, 2012.

The Hanover Companies assert Anova LLC is not entitled to any pre-tender fees because the fees were incurred before Anova LLC requested a defense from the Hanover Companies.

The Hanover Companies do not dispute that they paid some attorneys' fees to the Zobrist law firm, but argue they are not

responsible for any additional fees to the Zobrist law firm.  The Hanover Companies claim they can in no way be responsible for the attorneys' fees for work by the Zobrist law firm after December 10, 2013.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material

16

fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56©; Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere

allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v.
Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir.
1994).  When the non-moving party relies only on its own
affidavits to oppose summary judgment, it cannot rely on
conclusory allegations unsupported by factual data to create an
issue of material fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138
(9th Cir. 1993); <u>see also</u> <u>National Steel Corp. v. Golden Eagle
Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## <u>ANALYSIS</u>

Defendant/Counter-Claimant Anova Food, LLC ("Anova LLC")
moves for partial summary judgment on the issue of whether
Plaintiffs/Counter-Defendants The Hanover Insurance Company and
Massachusetts Bay Insurance Company (hereinafter "Hanover
Companies") had a duty to defend it in the Underlying Lawsuit,
<u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP.

Anova LLC also requests summary judgment in its favor as to
the issue of liability for its Breach of Contract claim stated in
Count I of its Counterclaim.

## I.   **Florida Law Governs the Interpretation of the Insurance Policies**

The Parties disagree as to the applicable law that governs
interpretation of the insurance policies at issue.

18

In a diversity case, a federal court must apply the choice of law rules of the state in which it sits.  DeRoburt v. Gannett Co., Inc., 83 F.R.D. 574, 576 (D. Haw. 1979); Lemen v. Allstate Ins. Co., 938 F.Supp. 640, 643 (D. Haw. 1995).

Hawaii courts resolve conflict of laws issues by determining which state has the strongest interest in seeing its laws applied to a particular case.  Lewis v. Lewis, 748 P.2d 1362, 1365 (Haw. 1988); Peters v. Peters, 634 P.2d 586, 593 (Haw. 1981).

The Hawaii Supreme Court discussed its choice of law jurisprudence in Mikelson v United Serv. Auto. Ass'n, 111 P.3d 601 (Haw. 2005).  The Mikelson court observed the following:

> This court has moved away from the traditional and rigid conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter.  This flexible approach places primary emphasis on deciding which state would have the strongest interest in seeing its laws applied to the particular case.  Hence, this court has said that the interests of the states and applicable public policy reasons should determine whether Hawai'I law or another state's law should apply.  The preferred analysis ... would be an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation.

Mikelson, 111 P.3d at 607 (citations, brackets, and quotation marks omitted); see Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co., 183 P.3d 734, 742 (Haw. 2007).

Review of the insurance policies demonstrates that Florida is the state with the most significant interest in having its laws applied.  It is clear from the contents of the policies that

it was the intent of the Parties for Florida law to apply to the interpretation of the contracts.

The policies contained many provisions that were specific to Florida.  For example, the OneBeacon Policies were addressed "To Our Florida Insureds" and recognized that Anova LLC operated its business primarily in Florida.  (OneBeacon Primary Policy at p. 5, ECF No. 39-2, attached as Ex. B to Pla.'s First Amended Complaint).  The OneBeacon Policies included Florida State Charges for "FLORIDA HURRICANE CATASTROPHE FUND" and "FLORIDA-CITIZENS-HIGH RISK ACCOUNT-EMERGENCY ASSESSMENT."  (Id. at p. 12).

The OneBeacon Policies included "Florida Uninsured Motorists Coverage" and "Florida Personal Injury Protection".  (Id. at pp. 26, 31, 37-38, 47-48; OneBeacon Umbrella Policy at p. 46, ECF No. 39-4).  The OneBeacon Policies contained cancellation, non-renewal, and change provisions specific to Florida, and cited to Florida state statutes.  (Id. at p. 3, ECF No. 39-3; Id. at pp. 13-15, ECF No. 39-4).

The Massachusetts Bay Policy contained similar provisions specific to Florida and listed the location of the insured's principle place of business and all of its premises as being in Florida.  (Massachusetts Bay Commercial Line Policy at pp. 1-3, 7, 22, attached as Ex. C to Pla.'s First Amended Complaint, ECF No. 39-5).

The Hanover Policy similarly recognized that Anova LLC's principal place of business was Florida and provided for notices and surcharges based on its Florida location.  (Hanover Policy at pp. 2, 7, 30, 44, 53, attached as Ex. D to Pla.'s First Amended Complaint, ECF No. 39-6).

Anova LLC points to the Hanover Companies' December 13, 2012 reservation of rights letter for further evidence in support of a finding that Florida law applies to the interpretation of the contracts at issue. (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 13, 2012, to counsel for Anova LLC, attached as Ex. 4 to Zobrist Decl. at pp. 3-14, ECF No. 75-4).

The December 13, 2012 letter stated, "It is our opinion that Florida law applies in this coverage situation and directly assessed punitive damages are not insurable in Florida.  Further, although directly addressed punitive damages are insurable in Hawaii coverage for those damages will not be implied.  Haw. Rev. Stat. §431:10-240."  (Id. at p. 13).

The insurer's statement that "Florida law applies to this coverage situation" is not dispositive of the issue, but it supports a finding that Florida law applies to the contracts at issue.  The insurer had a fiduciary duty to handle the defense of claims in good faith.  Doe v. Allstate Insur. Co., 653 So.2d 371, 374 (Fla. 1995).  In some cases, Florida courts have found that

an insured's reliance on a representation of the insurance adjuster may bind the insurer to create estoppel.  Id.; Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9, 13 (Fla. 1965); Old Republic Ins. Co. v. Von Onweller Const. Co., 239 So.2d 503, 504 (Fla. Dist. Ct. App. 1970) (finding the statements of the insurance adjuster are generally binding on the insurance company).

The Hanover Companies contend that despite its adjuster's statement in the December 13, 2012 letter, Hawaii law applies to the insurance policies at issue.  (Pla.'s Memo. in Opp. at p. 11, ECF No. 79).  The Hanover Companies assert that Hawaii has the most significant interest in seeing its laws applied because the Underlying Lawsuit was filed in the United States District Court for the District of Hawaii and the plaintiffs in that case were located in Hawaii.

The Hanover Companies' argument is unpersuasive.  The cases cited by the Hanover Companies involve automobile accidents that occurred in Hawaii.  The cases stand for the proposition that the State of Hawaii has an interest in applying its laws to determine the rights of persons injured from automobile accidents that occurred in Hawaii.  See Ingalls v. Gov't Emps. Ins. Co., 903 F.Supp.2d 1049, 1056-58 (D. Haw. 2012); Lemen, 938 F.Supp. at 643; Abramson v. Aetna Cas. & Sur. Co., 76 F.3d 304, 305 (9th Cir. 1996).

22

Unlike the cases relied upon by the Hanover Companies, the Underlying Lawsuit in this case involved patent infringement and false advertising of products sold nationally and internationally.  There was no accident that occurred in Hawaii. The majority of the fact witnesses identified by the Parties to be called at trial were from Florida and various other locations, not Hawaii. (Second Declaration of Darren Zobrist at ¶ 6, attached to Def.'s Reply, ECF No. 84; Anova Food, LLC's Revised Trial Witness List, dated 1/19/15, in <u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP, ECF No. 518; Plaintiffs William R. Kowalski and Hawaii International Seafood, Inc.'s Witness List dated 1/19/15, in <u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP, ECF No. 521).

There are no facts alleged that demonstrate that the patent infringement and false advertising claims alleged in the Underlying Lawsuit were exclusive to Hawaii.  The alleged injury did not occur only within the State of Hawaii.

Nothing in the contents of the policies suggests that Hawaii is the state with the most significant relationship to the insurance contracts at issue.  There are no references to Hawaii law or provisions directed specifically to locations in Hawaii.

Florida law applies to the interpretation of the insurance policies at issue.  <u>Mikelson</u>, 111 P.3d at 607.  Anova LLC is located in Florida, the contracts were issued and delivered in

Florida, and the policies referenced provisions specific to Florida.  The insurance policies' extensive contacts with Florida demonstrate that Florida is the state with the most significant relationship to the insurance policies.  <u>Id.</u>

## II.  Duty to Defend

Anova LLC claims that the Hanover Companies had a duty to defend it in the Underlying Lawsuit filed in the United States District Court for the District of Hawaii, <u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP, as a result of the applicable insurance policies.

### A.  Insurance Contract Interpretation Pursuant to Florida Law

Courts examine the insurance policy as a whole and give every provision its "full meaning and operative effect" when determining insurance coverage pursuant to Florida law.  <u>State Farm Fire and Cas. Co. v. Steinberg</u>, 393 F.3d 1226, 1231 (11th Cir. 2004) (quoting <u>Hyman v. Nationwide Mut. Fire Ins. Co.</u>, 304 F.3d 1179, 1186 (11th Cir. 2002)).

Insurance contracts are construed according to their plain meaning.  <u>Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.</u>, 913 So.2d 528, 532 (Fla. 2005).  Ambiguities in coverage provisions, particularly in exclusionary clauses, are strictly

24

construed against the insurer and in favor of coverage.  Trailer Bridge, Inc. V. Ill. Nat. Ins. Co., 657 F.3d 1135, 1141 (11th Cir. 2011); Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1086 (Fla. 2005).

**B.    Duty to Defend Pursuant to Florida Law**

Pursuant to Florida law, an insurer's duty to defend arises when a complaint filed against an insured alleges facts within the scope of the insurance policy's coverage.  Trizec Props., Inc. v. Bitmore Constr. Co., 767 F.2d 810, 811 (11th Cir. 1985) (citing Tropical Park, Inc. v. U.S. Fidelity & Guar. Co., 357 So.2d 253, 256 (Fla. Dist. Ct. App. 1978)).

Florida has adopted a strict rule that the insurer's duty to defend is based solely on the allegations in the complaint.  Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993); Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F.Supp.2d 1248, 1258 (M.D. Fla. 2002).  The insurer's duty to defend exists even if the facts alleged are untrue or the legal theories unsound.  Underwriters at Lloyds London v. STD Enters., Inc., 395 F.Supp.2d 1142, 1145 (M.D. Fla. 2005).

The duty to defend arises even though ultimately there may be no liability on the party of the insured.  Trizec Props., 767

F.2d at 811.  Doubts as to whether a duty to defend exists are resolved in favor of the insured.  Id. at 812.

An insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy.  Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1149 (11th Cir. 2010).  A duty to defend exists even if there is a possibility that coverage exists.  Chestnut Assocs., Inc. v. Assurance Co. of Am., 17 F.Supp.3d 1203, 1211 (M.D. Fla. 2014).  If the complaint alleges both covered and non-covered claims, the insurer's duty to defend is triggered and the insurer is obligated to defend the entire suit.  MCO Envt'l., Inc. v. Agric. Excess & Surplus Ins. Co., 689 So.2d 1114, 1115 (Fla. Dist. Ct. App. 1997); Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. Dist. Ct. App. 1992).

### C. The Hanover Companies Had a Duty to Defend Anova LLC in the Underlying Lawsuit

The First Amended Complaint filed in the Underlying Lawsuit in Kowalski v. Anova Food, LLC, et al., 11-cv-00795HG-RLP is the document that the Court looks to in determining if a duty to defend existed under the insurance policies at issue.

Kowalski's First Amended Complaint alleged claims of both patent infringement and false advertising.

There is no dispute that the insurance policies at issue did not cover patent infringement claims.  The policies did provide

26

coverage for false advertising.  The Parties dispute if the false advertising alleged in the First Amended Complaint was covered by the insurance policies at issue.

The First Amended Complaint alleged that Anova LLC had engaged in false advertising and unfair competition pursuant to the Lanham Act and Hawaii state law.  The allegations included claims that the fish Anova LLC sold was falsely advertised as being treated by a "clearsmoke" process rather than Kowalski's "tasteless smoke" process.  (Kowalski First Amended Complaint at ¶¶ 14-15, ECF No. 6; attached as Ex. A to Pla.'s First Amended Complaint, ECF No. 39-1).

The First Amended Complaint in the Underlying Suit claimed, "Defendants [Anova LLC's] use of such words, product and process descriptions, product labels and packaging, advertising, etc., constitute a misappropriation or infringement of advertising ideas, style of doing business, title and slogan, and also **disparagement of Plaintiffs, their products, their businesses**, and the '401 Patent and/or its processes." (<u>Id.</u> at ¶ 24) (emphasis added).

Each of the four insurance policies at issue provided coverage to Anova LLC during a portion of time that it was alleged to have engaged in false advertising.  Each of the policies provided coverage for "personal and advertising injury."

The Policies generally defined "personal and advertising

27

injury" as an injury arising out of either the use of another's advertising idea or from the publication of material that slanders, libels, disparages a person or organization or their goods, products, or services.  (OneBeacon Primary Policy at p. 44, ECF No. 39-3; OneBeacon Umbrella Policy at p. 33, ECF No. 39-4; Massachusetts Bay Policy at p. 44, ECF No. 39-5; Hanover Policy at pp. 14-15, ECF No. 39-6).

Courts applying Florida law have regularly found a duty to defend involving nearly the same policy definitions for "personal and advertising injury" where the complaint alleged false advertising and unfair competition claims.  Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1194 (11th Cir. 2002); E.S.Y., Inc. v. Scottsdale Ins. Co., __F.Supp.3d__, 2015 WL 6164666, *15 (Oct. 14, 2015); Adolfo House Distributing Corp. v. Travelers Prop. and Cas. Ins. Co., 165 F.Supp.2d 1332, 1339 (S.D. Fla. 2001); Tire Kingdom, Inc. v. First S. Ins. Co., 573 So.2d 885, 887 (Fla. Dist. Ct. App. 1990).

In Orlando Nightclub Enters., Inc. v. James River Ins. Co., 2007 WL 4247875, *5-*9 (M.D. Fla. Nov. 30, 2007), the United States District Court for the Middle District of Florida analyzed Florida law and the law of other jurisdictions regarding an insurer's duty to defend.  The district court found the allegations in the complaint for false advertising and unfair competition pursuant to Section 43(a) of the Lanham Act triggered

a duty to defend where the insurance policy provided for coverage for personal and advertising injury.  Id. at *9.

Pursuant to Florida law, the insurer bears the burden of proving applicability of a claimed policy exclusion.  Herrera v. C.A. Seguros Catatumbo, 844 So.2d 664, 668 (Fla. Dist. Ct. App. 2003).  The Hanover Companies have not sought to apply any of the exclusions in the insurance policies to the issue of its duty to defend Anova LLC.  The Hanover Companies have asserted that the exclusion relating to intellectual property may apply to issues of indemnity and reimbursement.  (Pla.'s Memo. in Opp. at pp. 28-30, ECF No. 79).

The Hanover Companies acknowledge that they agreed to defend Anova LLC in the Underlying Lawsuit.  In its letter dated December 13, 2012, the Hanover Companies stated: "Massachusetts Bay Insurance Company and Hanover Insurance Company acknowledge receipt of the tender of defense and indemnity for the claim referenced above, and will agree to defend Anova Food., LLC. pursuant to the following reservation of rights." (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 13, 2012, at p. 3, attached as Ex. 4 to Zobrist Decl., ECF No. 75-4).

The Hanover Companies do not seek to apply any of the exclusions contained in the insurance policies in their Opposition to Anova LLC's Motion for Partial Summary Judgment.

29

Rather, the Hanover Companies argue that they fulfilled their defense obligations.  (Pla.'s Memo. in Opp. at pp. 12-13, ECF No. 79).

It is clear by the contents of the First Amended Complaint in the Underlying Suit that the Hanover Companies' insurance policies required a duty to defend Anova LLC in the Underlying Lawsuit.

Defendant/Counter-Claimant Anova Food, LLC's Motion for Partial Summary Judgment (ECF No. 64) as to the Hanover Companies' Duty to Defend as stated in Counts I, II, and III of the First Amended Complaint is **GRANTED.**

The Court finds that the Hanover Companies had a duty to defend Anova LLC in the Underlying Lawsuit, <u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP.

## III. Pre-Tender Attorneys' Fees

Anova LLC requests summary judgment as to the issue of liability in Count I in its Counterclaim for Breach of Contract. Anova LLC argues that the Hanover Companies breached the terms of the insurance policies because they did not pay for all of Anova LLC's reasonable attorneys' fees in defending the Underlying Lawsuit.  Specifically, Anova LLC seeks reimbursement for attorneys' fees it paid to the Zobrist law firm.

First, Anova LLC seeks to obtain the pre-tender attorneys' fees it paid the Zobrist firm from December 2011 when the Underlying Lawsuit was filed until October 12, 2012, the date when Anova LLC requested a defense from the Hanover Companies.

## A.  __Nationwide v. Beville__

Anova LLC relies on a decision from the Florida District Court of Appeal in __Nationwide Mutual Fire Ins. Co. v. Beville__, 825 So.2d 999, 1003-04 (Fla. Dist. Ct. App. 2002) for its position that its pre-tender attorneys' fees are recoverable.

In __Beville__, the insured, Howard Beville, Jr., owned a citrus farm and was sued by his workers.  __Id.__ at 1001.  He was covered by two insurance policies issued by Nationwide.  __Id.__

In November 1997, after the suit was filed, Beville retained his own counsel.  __Id.__  In December 1997, a few weeks after retaining his own counsel, Beville met with his Nationwide insurance agent.  There was a dispute as to exactly what happened when Beville met with his insurance agent and the extent to which any information about the underlying lawsuit was provided to the agent.  __Id.__

Six months later, in June 1998, Beville asked for a defense by Nationwide.  __Id.__  Nationwide agreed to defend Beville under a reservation of rights but stated it would only cover attorneys' fees following the date he requested the defense in June 1998.

Id.  The lawsuit filed against Beville settled, and Nationwide paid the settlement.  Id.

Beville sued Nationwide for the attorneys' fees he incurred prior to requesting the defense in June 1998.  Id.  The Florida trial court awarded the attorneys' fees to Beville.  Id.

The appellate court upheld the trial court's decision awarding attorneys' fees.  Id. at 1003-04.  The Florida appellate court held that Nationwide ceded control of the litigation to Beville.  Id. at 1003.  The Beville court held that Nationwide breached its duty to defend and ceded control of the litigation for two reasons.

First, the Florida appellate court held that the Florida Claims Administration Statute applied.  The court in Beville found that the insurance company asserted a "coverage defense," based on its argument that Beville waited too long before informing the insurance company of the underlying suit.  Id.  The Florida appellate court held that the coverage defense asserted by Nationwide triggered the requirements of the Florida Claims Administration Statute.

The Florida Claims Administration Statute requires an insurer that relies on a coverage defense to either obtain a non-waiver agreement from the insured, or to retain counsel for the insured which is mutually agreed upon by the parties.  Fla. Stat. § 627.426(2)(b).

32

The District Court of Appeal of Florida found that Nationwide violated the Florida Claims Administration Statute because it did not obtain either a non-waiver agreement from Beville or retain counsel for Beville that was mutually agreed upon. _Id._ at 1004. The Florida court found that Nationwide breached its duty to defend and ceded control of the litigation to Beville because it did not comply with the requirements of the Florida Claims Administration Statute. _Id._

Second, the court held that Nationwide breached it duty to defend based on its decision to provide only a conditional defense. The court in _Beville_ found that the insurance company had ceded control of the litigation to Beville because it provided a defense pursuant to a reservation of rights. _Id._ The court stated that the conditional defense allowed Beville to take control of the suit and recover attorneys' fees from Nationwide. _Id._

The holdings in _Beville_ have subsequently been distinguished and refuted by other courts applying Florida law. The Florida court's findings in _Beville_ have been found to be contrary to Florida law. _Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund, Inc._, 2015 WL 1310756, *5 (M.D. Fla. Mar. 24, 2015); _Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc._, 344 F.Supp.2d 1358, 1371 (M.D. Fla. 2004).

Courts applying Florida law have found that an insurance company's offer to provide a conditional defense does not automatically result in a breach of the duty to defend and that a party must actually reject the offer of a conditional defense before it may take control of the defense.  <u>Western Heritage Ins. Co. v. Montana</u>, 30 F.Supp.3d 1366, 1372 (M.D. Fla. 2014) (citing <u>Aquero v. First Am. Ins. Co.</u>, 927 So.2d 894, 898 (Fla. Dist. Ct. App. 2005)).

**B.    The Holding in <u>Beville</u> Does Not Apply in this Case**

Anova LLC seeks to apply the holding in <u>Beville</u> in support of its request for attorneys' fees for the Zobrist law firm, including pre-tender fees.

<u>Beville</u> is distinguishable from the instant case.

First, the Florida Claims Administration Statute does not apply in this case.  <u>Mid-Continent Cas. Co. v. Basdeo</u>, 742 F.Supp.2d 1293, 1331-33 (S.D. Fla. 2010).

Second, the Hanover Companies' decision to provide a conditional defense did not result in a breach of their duty to defend.  <u>Travelers of Connecticut</u>, 2015 WL 1310756, at *5.

**1.    The Florida Claims Administration Statute Does Not Apply**

The Florida Claims Administration Statute only applies to "coverage defenses."  <u>Basdeo</u>, 742 F.Supp.2d at 1331.  A "coverage

34

defense" exists when the policy provides insurance for the claim but the insurance company argues that it does not have to provide the insurance because the insured did not comply with a technical requirement of the policy.  <u>AIU Ins. Co. v. Block Marina Inv., Inc.</u>, 544 So.2d 998, 1000 (Fla. 1989).  A defense that the insured did not provide sufficient notice of a claim to the insurance company or a defense that the insured did not properly cooperate with the insurance company are the most common "coverage defenses".  <u>Basdeo</u>, 742 F.Supp.2d at 1332; <u>Mid-Continent Cas. Co. v. King</u>, 552 F.Supp.2d 1309, 1316-17 (N.D. Fla. 2008).

An insurance company does not raise a "coverage defense" if it argues that the policy did not provide insurance for a claim at issue, either because it was outside the effective dates of the policy, it was not within the scope of the terms of the policy, or it was subject to an exclusion contained in the policy.  <u>Mid-Continent Cas. Co.</u>, 552 F.Supp.2d at 1316.  An insurer does not assert a coverage defense where it argues that there was no insurance coverage in the first place.  <u>Country Manors Ass'n v. Master Antenna Sys., Inc.</u>, 534 So.2d 1187, 1194-95 (Fla. Dist. Ct. App. 1988).

The Hanover Companies' December 13, 2012 reservation of rights letter does not assert a "coverage defense" subject to the requirements of the Florida Claims Administration Statute.  The December 13, 2012 letter stated the Hanover Companies' policies

did not cover any false advertising claims that occurred prior to the date that the policies took effect. (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 13, 2012, attached as Ex. 4 to Zobrist Decl. at p. 13, ECF No. 75-4). The letter also stated exclusions in the policy applied to prevent insurance for any false advertising claims if it was determined that Anova LLC intentionally violated Kowalski's rights. (Id.)

The defenses asserted in the December 13, 2012 letter are not "coverage defenses" that would trigger the requirements of the Florida Claims Administration Statute. Mid-Continent Cas. Co., 552 F.Supp.2d at 1316.

The holding in Beville does not apply in this case. The Hanover Companies did not forfeit their ability to control the defense of the Underlying Suit.

### 2. Anova LLC Is Not Entitled to Pre-Tender Attorneys' Fees

The holding in Beville that an insurance company breaches its duty to defend by providing a conditional defense is contrary to Florida law. Florida law provides that it is possible for an insurance company to provide a defense under a reservation of rights without breaching its contract. Petro v. Travelers Cas. and Sur. Co. of America, 54 F.Supp.3d 1295, 1303 (N.D. Fla. 2014)

36

(citing <u>Mid-Continent Cas. Co.</u>, 601 F.3d at 1149)); <u>Travelers Indem. Co. of Connecticut</u>, 2015 WL 1310756, *5.

Courts applying Florida law require the insured to "actually reject" the conditional defense provided by the insurance company in order to seek reimbursement of attorneys' fees. <u>Royal Oak Enters., Inc.</u>, 344 F.Supp.2d at 1370-71; <u>Western Heritage Ins. Co.</u>, 30 F.Supp.3d at 1372.

The Hanover Companies' December 13, 2012 reservation of rights letter did not constitute a breach of contract. <u>Royal Oak Enters., Inc.</u>, 344 F.Supp.2d at 1371. The Hanover Companies offered to provide a defense to Anova LLC in its December 13, 2012 reservation of rights letter. In the letter, the Hanover Companies agreed to hire Attorney Gary Grimmer to provide a defense to Anova LLC. Anova LLC did not reject the defense provided by the Hanover Companies. <u>Western Heritage Ins. Co.</u>, 30 F.Supp.3d at 1372. Anova LLC agreed to the appointment of Attorney Grimmer, who served as counsel until December 10, 2013.

Pre-tender attorneys' fees are not recoverable in this case. Anova LLC is not entitled to attorneys' fees it incurred before requesting a defense from the Hanover Companies on October 12, 2012.

**IV.  Post-Tender Attorneys' Fees**

Anova LLC argues that the Hanover Companies are liable for breach of contract because the Hanover Companies did not pay all of its post-tender attorneys' fees to the Zobrist law firm.

Pursuant to Florida law, where an insurer wrongfully refuses to provide any defense at all, the insurer is liable for the reasonable attorneys' fees and other expenses incurred in defending the action as well as damages for breach of contract. Fla. Ins. Guar. Ass'n, Inc. v. All the Way with Bill Vernay, Inc., 864 So.2d 1126, 1129 (Fla. Dist. Ct. App. 2003).

The question is more complicated when the insurer provides defense counsel to the insured to defend the underlying suit, but the insured retains its own independent counsel.

Florida law requires an insurer to provide an adequate defense of a claim against its insured. Maronda Homes, Inc. of Fla. v. Progressive Exp. Ins. Co., 118 F.Supp.3d 1332, 1335 (M.D. Fla. 2015). An insured may retain its own counsel and recoup reasonable attorneys' fees from the insurer if the defense provided by the insurer is not adequate. Id. (citing Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n, 483 So.2d 513, 517 (Fla. Dist. Ct. App. 1986)).

An insurer is not required to pay the insured's expenses unless the actions of the insurer have forced the insured to

retain its own attorneys.  Id.; Royal Oak Enterprises, Inc., 344
F.Supp.2d at 1369.

There are disputed questions of material fact concerning the
post-tender attorneys' fees Anova LLC incurred from the Zobrist
law firm that prevent summary judgment.

Anova LLC states that the Hanover Companies agreed to assign
the Zobrist law firm as counsel.  (Zobrist Decl. at ¶ 6, 14, ECF
No. 75; Second Decl. of Darren Zobrist at ¶¶ 2-4, ECF No. 84).

The Zobrist law firm appeared as counsel of record and the
Hanover Companies are alleged to have paid the Zobrist firm a
portion of their attorneys' fees.  (Zobrist Decl. at ¶¶ 13-14,
ECF No. 75; Second Declaration of Darren Zobrist at ¶ 2, attached
to Def.'s Reply, ECF No. 84).

Anova LLC asserts that "Zobrist Law did the bulk of the work
on the case."  (Zobrist Decl. at ¶ 5, ECF No. 75).  Anova LLC
claims that:

> For a short period of time, Hanover paid some of
> Zobrist Law's fees, but Hanover made certain deductions
> only for an alleged failure to comply with "billing
> guidelines" that Hanover had never provided to Zobrist
> Law.  Zobrist Law submitted bills to Hanover for
> $669,778 in post-tender fees incurred and billed, of
> which Hanover reimbursed Anova only $284,624, leaving a
> balance owed of $385,153.

(Zobrist Decl. at ¶ 14, ECF No. 75).

On December 10, 2013, the Hanover Companies decided to
change counsel from Attorney Gary Grimmer to Attorneys Wesley
Ching and Leighton Chong to represent Anova LLC.  (Letter from

Hanover Regional Liability Adjuster Stephen E. Colville, dated December 10, 2013, attached as Ex. 5 to Zobrist Decl. at pp. 4-5, ECF No. 75-5).

In the December 10, 2013 Letter, the Hanover Companies stated that Anova LLC would be responsible to pay for any attorneys' fees for the Zobrist law firm if it chose to retain the firm. (<u>Id.</u>)

The Hanover Companies have taken the position that it did not agree to hire the Zobrist law firm, despite the contradictory evidence that it paid for a portion of the Zobrist law firm's attorneys' fees. (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 13, 2012, to counsel for Anova LLC, attached as Ex. 4 to Zobrist Decl. at pp. 3-14, ECF No. 75-4).

There are no facts to indicate for which period of time the attorneys' fees were paid to the Zobrist firm by the Hanover Companies. The record does not include what agreement was reached concerning the billing for the Zobrist law firm.

It is also unclear if Anova LLC is claiming inadequacy of the defense provided by Attorneys Wesley Ching and Leighton Chong that would allow the Court to determine if Anova LLC is entitled to fees for independently retained counsel.

The disputes of fact in the record preclude the Court from determining if Anova LLC is entitled to additional attorneys' fees for the Zobrist law firm.  <u>Aquero</u>, 927 So.2d at 898.

Based on the disputes of material fact in the record, Anova LLC's Motion for Partial Summary Judgment (ECF No. 64) as to Count I in its Counterclaim for Breach of Contract is **DENIED**.


## CONCLUSION


Defendant/Counter-Claimant Anova Food, LLC's MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DUTY TO DEFEND (ECF No. 64) is **GRANTED, IN PART, AND DENIED, IN PART.**

Defendant/Counter-Claimant Anova Food, LLC's Motion for Partial Summary Judgment as to the Hanover Companies' Duty to Defend as stated in Counts I, II, and III of the First Amended Complaint is **GRANTED**.

Anova Food, LLC's Motion for Partial Summary Judgment as to


//

//

//

//

//

41

Count I in its Counterclaim for Breach of Contract is

**DENIED**.


IT IS SO ORDERED.

DATED:    March 24, 2016, Honolulu, Hawaii.

Helen Gillmor
United States District Judge


The Hanover Insurance Company; Massachusetts Bay Insurance
Company v. Anova Food, Inc.; Anova Food, LLC; Counterclaimants
Anova Food, LLC; Anova Food, Inc. v. Counter-Defendants The
Hanover Insurance Company; Massachusetts Bay Insurance Company;
Civ. No. 14-00281HG-RLP; **ORDER GRANTING, IN PART, AND DENYING, IN
PART, DEFENDANT/COUNTER-CLAIMANT ANOVA FOOD, LLC'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (ECF No. 64)**