IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY, | ) ) ) ) | Civ. No. 14-00281 HG-RLP |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| ANOVA FOOD, LLC; ANOVA FOOD, INC. | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) ) | |
| ANOVA FOOD, LLC, | ) ) | |
| Counter-Claimant, | ) ) ) | |
| vs. | ) ) | |
| THE HANOVER INSURANCE COMPANY; MASSACHUSETTS BAY INSURANCE COMPANY, | ) ) ) ) | |
| Counter-Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER DISMISSING ALL CLAIMS AGAINST DEFENDANT ANOVA FOOD, INC.**

**and**

**DENYING PLAINTIFFS THE HANOVER INSURANCE COMPANY AND MASSACHUSETTS BAY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 97)**

**and**

1

**GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT ANOVA FOOD LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 101)**

Plaintiffs/Counter-Defendants The Hanover Insurance Company and Massachusetts Bay Insurance Company ("Hanover Companies") have filed a declaratory judgment action against Defendant/Counter-Claimant Anova Food, LLC and Defendant Anova Food, Inc. relating to insurance policies that were in effect between July 1, 2010 and July 11, 2014.

Defendant/Counter-Claimant Anova Food, LLC ("Anova LLC") filed a Counterclaim against the Hanover Companies for breach of contract and for bad faith relating to the insurance contracts at issue.

The Court previously ruled that the Hanover Companies owed Anova LLC a duty to defend in the underlying litigation against it in the United States District Court for the District of Hawaii, <u>Kowalski v. Anova Food, LLC, et al.</u>, Civ. No. 11-00795HG-RLP ("Underlying Lawsuit").

The Underlying Lawsuit was brought in December 2011 against Anova LLC and Anova Food, Inc. for patent infringement and personal and advertising injury.

The Hanover Companies provided defense counsel for Anova LLC in the Underlying Lawsuit.

2

Anova Food, Inc. obtained separate counsel and was not defended by the Hanover Companies in the Underlying Lawsuit.

In September 2014, all claims against Anova Food, Inc. and all claims against Anova Food, LLC that occurred on or before July 1, 2010 were settled in the Underlying Lawsuit. Neither Anova LLC nor the Hanover Companies contributed toward the September 2014 settlement.

Anova Food, Inc. was dismissed from the Underlying Lawsuit pursuant to a joint stipulation.

In March 2015, Anova LLC entered into a separate settlement agreement for the remaining claims against it in the Underlying Lawsuit.  Both Anova LLC and the Hanover Companies contributed to the March 2015 settlement.  The following month the parties entered into a stipulation to dismiss the remaining claims against Anova LLC in the Underlying Lawsuit and the case was closed.

**MOTIONS CURRENTLY BEFORE THE COURT:**

**The Hanover Companies' Motion for Summary Judgment**

The Hanover Companies filed a Motion for Summary Judgment seeking a determination as to their duty to indemnify Anova LLC relating to the Underlying Lawsuit.

3

The Hanover Companies seek allocation, reimbursement, and recoupment of money from Anova LLC.

The Hanover Companies provided a defense to Anova LLC in the Underlying Lawsuit, but they argue that the defense was provided with a reservation of their rights.

The Hanover Companies assert Anova LLC was not covered by the insurance policies at issue because the Underlying Lawsuit's claims for patent infringement and personal and advertising injury were outside the scope of the policies' definition of "personal and advertising injury."

**Anova LLC's Motion for Summary Judgment**

Anova LLC has filed a Motion for Partial Summary Judgment.  Anova LLC asserts the Hanover Companies owed it a duty to indemnify based on the insurance policies at issue. Anova LLC seeks to recover the money it contributed to the March 2015 settlement.

In addition, Anova LLC seeks summary judgment on Count I of its Counterclaim for Breach of Contract.  Anova LLC asserts that the Hanover Companies breached the terms of the insurance policies for refusing to pay all of Anova LLC's attorneys' fees in defending the Underlying Lawsuit.

**Anova Food, Inc. Dismissed**

At the hearing on the Motions for Summary Judgment, the Parties agreed to dismiss all claims against Anova Food, Inc.

All claims against Anova Food, Inc. are **DISMISSED WITH PREJUDICE.**

Plaintiffs/Counter-Defendants the Hanover Companies' Motion for Summary Judgment (ECF No. 97) is **DENIED.**

Defendant/Counter-Claimant Anova LLC's Motion for Partial Summary Judgment (ECF No. 101) is **GRANTED, IN PART, AND DENIED, IN PART.**

The Hanover Companies are not entitled to recover any attorneys' fees from Anova LLC.

The Hanover Companies' insurance polices covered Anova LLC for the personal and advertising injury claims asserted in the Underlying Lawsuit.

The March 2015 settlement pertaining to Anova LLC included both covered and non-covered claims. Neither the Hanover Companies nor Anova LLC are entitled to recover their contributions to the March 2015 settlement in the Underlying Lawsuit.

The Hanover Companies are required to pay reasonable attorneys' fees incurred by the Zobrist law firm in defending

Anova LLC in the Underlying Lawsuit between October 12, 2012 and December 10, 2013.

**PROCEDURAL HISTORY**

On June 19, 2014, the Hanover Companies filed a Complaint. (ECF No. 1).

On October 2, 2014, Anova LLC and Anova Food, Inc. filed an Answer and Counterclaim. (ECF No. 14).

On May 29, 2015, the Hanover Insurance Companies filed a First Amended Complaint. (ECF No. 39).

On June 12, 2015, Anova LLC filed a Counterclaim in Response to the First Amended Complaint. (ECF No. 40-1).

On December 23, 2015, Anova LLC filed a MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DUTY TO DEFEND. (ECF No. 64).

On March 16, 2016, the Hanover Companies filed a MOTION FOR SUMMARY JUDGMENT (ECF No. 97) along with a Concise Statement of Facts. (ECF No. 99).

On the same date, Anova LLC filed a MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING (1) HANOVER'S DUTY TO INDEMNIFY AND (2) REASONABLENESS OF ZOBRIST LAW'S ATTORNEY FEES (ECF No.

101) along with a Concise Statement of Facts (ECF No. 103).

On March 24, 2016, the Court issued an ORDER GRANTING, IN
PART, AND DENYING, IN PART, DEFENDANT/COUNTERCLAIMANT ANOVA
FOOD, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT as to the duty
to defend.  (ECF No. 113).

On April 11, 2016, the Hanover Companies filed its
Opposition to Anova LLC's Motion for Partial Summary Judgment
and its Concise Statement of Facts in Opposition to Anova
LLC's Motion for Partial Summary Judgment.  (ECF Nos. 123,
124).

On the same date, Anova LLC filed its Opposition to the
Hanover Companies' Motion for Summary Judgment and its Concise
Statement of Facts in Opposition to the Hanover Companies'
Motion for Summary Judgment.  (ECF Nos. 118, 119).

On April 18, 2016, the Court issued a Minute Order
striking Anova LLC's April 11, 2016 filings (ECF Nos. 118,
119) for failure to comply with the Local Rules of the
District of Hawaii.  (ECF No. 127).  The Court continued the
briefing schedule to allow Anova LLC to re-file its
Opposition.  (Id.)

On April 25, 2016, Anova LLC filed its Opposition to the
Hanover Companies' Motion for Summary Judgment and its Concise

Statement of Facts in Opposition to the Hanover Companies'
Motion for Summary Judgment.  (ECF Nos. 129, 130).

On April 27, 2016, the Hanover Companies requested a
continuance of the hearing date, which was granted.  (ECF No.
136, 137).

On May 13, 2016, the Hanover Companies filed their Reply.
(ECF No. 145).

On the same date, Anova LLC filed its Reply.  (ECF No.
144).

On June 23, 2016, the Court held a hearing on the Hanover
Companies' Motion for Summary Judgment (ECF No. 97) and Anova
LLC's Motion for Partial Summary Judgment (ECF No. 101).

The Parties agreed to the dismissal of Anova Inc. with
prejudice.


## BACKGROUND

### ANOVA FOOD, LLC

Defendant/Counter-Claimant Anova Food, LLC ("Anova LLC")
is a company that sells and markets fish.  (Declaration of
Darren Zobrist, Chief Executive Officer of Anova LLC ("Zobrist
Decl.") at ¶ 2, ECF No. 75).

Anova LLC began operations in May 2010 after it acquired
certain assets from Anova Food, Inc., which had ceased

8

operations the same month.  (Zobrist Decl. at ¶ 2, ECF No.
75).

Anova LLC was covered by the four commercial liability
insurance policies that were in effect between July 1, 2010
and July 11, 2014.  (See Insurance Policies attached as Exs.
B, C, D to Pla.'s First Amended Complaint, ECF Nos. 39-2—6).

**ANOVA FOOD, INC.**

Anova Food, Inc. ("Anova Inc.") is a co-defendant in this
case.  Anova Inc. ceased operations in May 2010, before the
July 1, 2010 commencement of the insurance policies at issue.
(Zobrist Decl. at ¶ 2, ECF No. 75).

Anova Inc. had separate insurers and separate counsel
from Anova LLC in the Underlying Lawsuit.  (Id. at ¶¶ 8-9).
Anova Inc. was covered by separate insurance policies that
were in effect before July 1, 2010.  (Id.)

In September 2014, Anova Inc. reached a settlement in the
Underlying Lawsuit.  (Id. at ¶¶ 8-10; September 2014
Settlement attached as Ex. 1 to Zobrist Decl., ECF No. 75-1).
The September 2014 settlement settled all claims against Anova
Inc. and any claims against Anova Food, LLC that occurred on
or before July 1, 2010.  (Id.)

9

In September 2014, the Parties in the Underlying Lawsuit entered into a joint stipulation to dismiss Anova Inc.

The Hanover Companies' First Amended Complaint asserts claims against Anova Inc.  (ECF No. 39).

At the hearing on the Motions for Summary Judgment held on June 23, 2016, the Parties agreed to dismiss all claims against Anova Food, Inc.

All claims against Anova Food, Inc. are **DISMISSED WITH PREJUDICE.**

**INSURANCE POLICIES AT ISSUE**

The Declaratory Judgment action filed by the Plaintiffs/Counterclaim-Defendants The Hanover Insurance Company and Massachusetts Bay Insurance Company (hereinafter "Hanover Companies")[1] concerns four commercial liability insurance policies.

The Parties agree that the Hanover Companies were responsible for four insurance policies issued to Anova Holding USA, LLC, which covered Anova LLC.

---

[1] The Massachusetts Bay Insurance Company is wholly owned by The Hanover Insurance Company.  (Plaintiff Massachusetts Bay Insurance Company's Corporate Disclosure Statement, ECF No. 4).  The Parties in their briefing refer to Plaintiffs/Counter-Defendants The Hanover Insurance Company and Massachusetts Bay Insurance Company collectively as "Hanover".

**The OneBeacon Policies:**

The first two policies were a primary commercial liability policy and an umbrella commercial liability policy that were issued by OneBeacon Insurance Company to Anova Holding USA, LLC, Policy No. 713-00-91-51-0002, effective from July 1, 2010 to July 1, 2011 ("OneBeacon Policies"). (OneBeacon Policies attached as Exhibit B to Pla.'s First Amended Complaint, ECF No. 39-2—4).

**The Massachusetts Bay Policy:**

The third policy at issue is a primary commercial liability policy issued by Massachusetts Bay Insurance Company to Anova Holding USA, LLC, Policy No. LDY 9192618 00, effective July 1, 2011 to July 1, 2012 and renewed through and including July 11, 2014 ("The Massachusetts Bay Policy"). (Massachusetts Bay Insurance Company Policy attached as Ex. C to Pla.'s First Amended Complaint, ECF No. 39-5).

**The Hanover Policy:**

The final policy at issue is a commercial umbrella liability policy issued by The Hanover Insurance Company to Anova Holding USA, LLC, Policy No. UHY 9124369 00, effective

from July 1, 2011 to July 1, 2012 ("Hanover Policy").  (The
Hanover Bay Insurance Company Policy attached as Ex. D to
Pla.'s First Amended Complaint, ECF No. 39-6).

**Coverage for "Personal and Advertising Injury":**

Each of the four policies provided coverage for claims of
"personal and advertising injury."  (OneBeacon Primary Policy
at p. 9, ECF No. 39-3; OneBeacon Umbrella Policy at p. 22, ECF
No. 39-4; Massachusetts Bay Policy at p. 36, ECF No. 39-5;
Hanover Policy at p. 14, ECF No. 39-6).  The definition of
"personal and advertising injury" in the policies contained a
disparagement clause.

Each of the policies included a number of standard
exclusions for personal and advertising injuries.
Specifically, the policies included an exclusion for
intellectual property claims, an exclusion for claims based on
the failure of goods to conform, an exclusion for willful
wrongdoing, and an exclusion for claims arising outside the
policy period.  (See OneBeacon Primary Policy at p. 44, ECF
No. 39-3; OneBeacon Umbrella Policy at p. 33, ECF No. 39-4;
Massachusetts Bay Policy at pp. 36, 44, ECF No. 39-5; Hanover
Policy at pp. 14-15, ECF No. 39-6).

**THE UNDERLYING LAWSUIT**

12

The coverage dispute arises from allegations in a patent infringement and personal and advertising injury case that was filed in the United States District Court for the District of Hawaii.

On December 29, 2011, the Underlying Lawsuit, <u>William R. Kowalski; Hawaii International Seafood, Inc. v. Anova Food, LLC; Anova Food, Inc., et al.</u>, Civ. No. 11-00795HG-RLP, was filed against Anova LLC and Anova Inc.

The First Amended Complaint in <u>Kowalski</u> alleged patent infringement claims and personal and advertising injury claims, asserting that "Defendants [Anova Inc. and Anova LLC] falsely, misleadingly, deceptively advertised, promoted, and sold fish." (<u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP, First Amended Complaint filed Jan. 2, 2012, ECF No. 6; attached as Ex. A to Pla.'s First Amended Complaint, ECF No. 39-1).

The First Amended Complaint brought Count I for patent infringement, Count II for unfair competition and deceptive trade practices pursuant to 15 U.S.C. § 1125(a), Count III for unfair methods of competition pursuant to Haw. Rev. Stat. § 480-2, and Count IV for unfair and deceptive trade practices in violation of Haw. Rev. Stat. § 481A-3.  (<u>Id.</u> at pp. 3-8).

13

The First Amended Complaint in the Underlying Suit claimed, "Defendants [Anova LLC's] use of such words, product and process descriptions, product labels and packaging, advertising, etc., constitute a misappropriation or infringement of advertising ideas, style of doing business, title and slogan, and also **disparagement of Plaintiffs, their products, their businesses**, and the '401 Patent and/or its processes." (<u>Id.</u> at ¶ 24) (emphasis added).

The plaintiffs in the Underlying Lawsuit set forth a number of exhibits and depositions to be used at trial that documented Anova LLC's publication of materials claiming that its fish products were made using the "Clearsmoke" process and that its process was superior to the Kowalski Plaintiffs' "tasteless smoke" patented process. (<u>See</u> Anova LLC E-mails and Marketing Materials attached as Exhibits 10 through 17 to the Second Declaration of Darren Zobrist ("Zobrist Sec. Decl."), ECF No. 105-1—105-7).

**ATTORNEYS REPRESENTING ANOVA LLC IN THE UNDERLYING LAWSUIT**

The Hanover Companies and Anova LLC dispute the attorneys' fees owed to the Zobrist Law Group as a result of the Hanover Companies' duty to defend Anova LLC in the Underlying Lawsuit. The Court previously ruled that the

14

Hanover Companies had a duty to defend Anova LLC in the Underlying Lawsuit.  In the Order, the Court explained that Anova LLC is not entitled to attorneys' fees incurred before requesting a defense from the Hanover Companies on October 12, 2012.

**Representation Between October 12, 2012 and December 10, 2013**

On October 12, 2012, Anova LLC requested the Hanover Companies provide it a defense to the Underlying Suit pursuant to the relevant insurance policies.  (Zobrist Decl. at ¶ 6, ECF No. 75).

Anova LLC was represented by both Attorney Gary Grimmer and the Zobrist law firm in the Underlying Lawsuit between October 12, 2012 until December 10, 2013.  (Zobrist Decl. at ¶¶ 5-6, ECF No. 75; Declaration of Craig E. Marshall, member of the Zobrist Law Group, ("Marshall Decl.) at ¶¶ 6-8, ECF No. 104).

The Hanover Companies agreed to provide a defense to Anova LLC pursuant to a reservation of rights on December 13, 2012, and agreed to assign Gary Grimmer as defense counsel who Anova LLC had already retained.  (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 13, 2012, ECF No. 75-4).

15

The Hanover Companies acquiesced to Anova LLC's retention of the Zobrist law firm and paid for a portion of the Zobrist law firm's attorneys' fees incurred by Anova LLC.  (Marshall Decl. at ¶¶ 16-35, ECF No. 104; Declaration of Stephen E. Colville at ¶ 5, ECF No. 123-1).

 Anova LLC submitted evidence that the Hanover Companies approved billing rates for the Zobrist law firm and paid fees for the Zobrist law firm when it was counsel of record in the Underlying Lawsuit between October 12, 2012 and December 10, 2013.  (Marshall Decl. at ¶¶ 16, 33, ECF No. 104; see e-mails and print-outs regarding the Hanover Companies' acceptance of billing rates for the Zobrist law firm, attached as Exs. 1, 2, 3 to the Marshall Decl., ECF No. 104-1—104-3; see Bill Analysis Reports for the Zobrist law firm's billing to the Hanover Companies for the Underlying Lawsuit dated 10/11/2013 to 12/31/13, attached as Exs. 5, 6, 7, 8, 9 to the Marshall Decl., ECF No. 104-5—104-9).

**Representation After December 10, 2013**

On December 10, 2013, the Hanover Companies sent a letter to Anova LLC to inform it that they had decided to change counsel in the Underlying Lawsuit.  The December 10, 2013 letter stated:

> Hanover is transferring the defense of this matter
> on behalf of Anova Food, LLC to attorneys Wesley
> H.H. Ching and Leighton K. Chong...Hanover will
> continue to defend Anova Food, LLC under its
> previously issued reservation of rights and will be
> fulfilling that obligation by the retention of
> attorneys Ching and Chong.

(Letter from Hanover Regional Liability Adjuster Stephen

E. Colville, dated December 10, 2013, to counsel for Anova LLC

at pp. 4-5, ECF No. 75-5).

Also in the December 10, 2013 Letter, the Hanover

Companies stated:

> You have indicated a desire for the Zobrist Law
> Group to stay involved in the defense of the claims
> asserted in part because of the firm's history with
> intellectual property issues involving Anova Foods,
> LLC.  Anova Foods, LLC has the right to retain
> separate counsel if it so chooses.  However, the
> continued involvement of the Zobrist Law Group will
> need to be funded directly by Anova Foods, LLC.
> Hanover's defense obligation, as set forth in the
> previous reservation of rights letter, will be
> fulfilled by the retention of and payment to
> attorneys Ching and Chong as set forth herein.

(<u>Id.</u> at p. 5).

**March 2015 Settlement**

On March 3, 2015, a settlement of the Underlying Lawsuit

was held on the record.  (<u>Kowalski v. Anova Food, LLC, et al.</u>,

11-cv-00795HG-RLP, Minutes of Settlement on the Record dated

March 3, 2015, ECF No. 633).  Anova LLC and the Kowalski

Plaintiffs entered into a written Settlement Agreement and

17

Release.  (March 2015 Settlement Agreement and Release, attached as Ex. 9 to Zobrist Decl., ECF No. 75-9).

The Hanover Companies and Anova LLC agreed to contribute equally to the settlement amount contained in the March 2015 Settlement Agreement and Release.  (Letter from the Hanover Companies to Anova LLC dated April 1, 2015, Re: March 2015 Settlement, attached as Ex. 1 to Declaration of Skyler Cruz ("Cruz Decl.), ECF No. 98-1).

On April 23, 2015, the District Court issued a Stipulation and Order for Dismissal with Prejudice as to all claims and parties in the Underlying Lawsuit.  (<u>Kowalski v. Anova Food, LLC, et al.</u>, 11-cv-00795HG-RLP, Stipulation For Dismissal With Prejudice as to All Claims and Parties, ECF No. 635).

Anova LLC claims that the Hanover Companies have refused to pay outstanding legal bills it incurred from the Zobrist law firm between October 12, 2012 and December 10, 2013.

## <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that

a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d

19

270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen

v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also
National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496,
502 (9th Cir. 1997).

## ANALYSIS

The Parties agreed at the hearing held on June 23, 2016
to dismiss all claims against Anova Food, Inc.

All claims against Anova Food, Inc. are **DISMISSED WITH
PREJUDICE.**

The Court previously ruled that the Hanover Companies had
a duty to defend Anova LLC in the Underlying Lawsuit.

The Parties now each seek summary judgment on the issue
of the Hanover Companies' duty to indemnify Anova LLC for the
claims asserted against it in the Underlying Lawsuit.

The Hanover Companies and Anova LLC each seek to recover
contributions they made toward the March 2015 settlement of
the Underlying Lawsuit.  Anova LLC also seeks to recover
attorneys' fees owed to the Zobrist law firm.

## I.   The Hanover Companies' Duty to Indemnify Anova LLC

### A.   Duty to Indemnify Pursuant to Florida Law

Florida law governs the interpretation of the insurance
policies at issue.  (Order Granting, In Part, and Denying, In

21

Part, Anova Food, LLC's Motion for Partial Summary Judgment at p. 18, ECF No. 113).

Pursuant to Florida law, courts examine the insurance policy as a whole and give every provision its "full meaning and operative effect" when determining insurance coverage. State Farm Fire and Cas. Co. v. Steinberg, 393 F.3d 1226, 1231 (11th Cir. 2004) (quoting Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1186 (11th Cir. 2002)).

Insurance contracts are construed according to their plain meaning. Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co., 913 So.2d 528, 532 (Fla. 2005). Ambiguities in coverage provisions, particularly in exclusionary clauses, are strictly construed against the insurer and in favor of coverage. Trailer Bridge, Inc. V. Ill. Nat. Ins. Co., 657 F.3d 1135, 1141 (11th Cir. 2011); Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1086 (Fla. 2005).

Pursuant to Florida law, liability of an insurer depends upon whether the insured's claim is within the coverage of the policy. Spencer v. Assurance Co. of Am., 39 F.3d 1146, 1149 (11th Cir. 1994). A determination of coverage is a condition precedent to any recovery against an insurer. Steil v. Fla. Physicians' Ins. Reciprocal, 448 So.2d 589, 592 (Fla. Dist. Ct. App. 1984).

22

The duty to indemnify is narrower than the duty to defend and depends upon actual coverage measured by the facts as they unfolded at trial or are inherent in the settlement agreement. IDC Constr. v. Admiral Ins. Co., 339 F.Supp.2d 1342, 1349 (S.D. Fla. 2004) (citation and internal quotation marks omitted); see State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1077n.3 (Fla. 1998).

Facts inherent in a settlement agreement are those facts which existed at the time the settlement was reached that can reasonably be inferred to have affected settlement. Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc., 344 F.Supp.2d 1358, 1366 (M.D. Fla. 2004) (citing Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1099 (1st Cir. 1989)).

**B.    The Hanover Companies' Policies Included Coverage for "Personal and Advertising Injury"**

The Underlying Lawsuit contained claims for patent infringement and claims for personal and advertising injury. (Kowalski v. Anova Food, LLC, et al., 11-cv-00795HG-RLP, First Amended Complaint filed Jan. 2, 2012, ECF No. 6; attached as Ex. A to Pla.'s Amended Complaint, ECF No. 39-1).

The patent infringement claims in the Underlying Lawsuit were not covered by the Hanover Companies' insurance policies.

23

See <u>Gencor Indus., Inc. v. Wausau Underwriters Inc. Co.</u>, 857 F.Supp. 1560, 1564 (M.D. Fla. 1994).

The Parties dispute if the evidence set forth in the Underlying Lawsuit for the remaining claims, generally referred to as the personal and advertising injury claims, triggered the Hanover Companies' duty to indemnify Anova LLC.

The Hanover Companies' four insurance policies included coverage for "personal and advertising injury." The Hanover Companies' policies defined "personal and advertising injury", in relevant part, as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> ...
> (The Parties agree that sections a., b., and c. are not applicable in this case)
>
> > d.   Oral or written publication of material that slanders or libels a person or organization. This does not include any slander or libel related to the actual or alleged infringement or violation of any intellectual property rights or laws;
> >
> > e.   **Oral or written publication of material that disparages a person's or organization's goods, products or services.** This does not include any disparagement related to the actual or alleged infringement or violation of any intellectual property rights or laws;
> >
> > f.   Oral or written publication of material that violates a person's right of privacy;

g.   The use of another's advertising idea in
     your "advertisement"; or

h.   Infringing upon another's copyright, trade
     dress or slogan in your "advertisement".

(OneBeacon Primary Policy at p. 9, ECF No. 39-3;
OneBeacon Umbrella Policy at p. 22, ECF No. 39-4; see also
Massachusetts Bay Policy at p. 44, ECF No. 39-5; Hanover
Policy at pp. 14-15, ECF No. 39-6) (emphasis added).

The evidence from the Underlying Lawsuit demonstrates
that the plaintiffs in the Underlying Lawsuit, William R.
Kowalski and Hawaii International Seafood, Inc. ("Kowalski
Plaintiffs"), brought their personal and advertising injury
claims, in part, on a theory of disparagement.

The plaintiffs in the Underlying Lawsuit asserted that
the fish products that Anova LLC sold were falsely advertised
as being treated by a "Clearsmoke" process rather than
Kowalski's "tasteless smoke" process.  (Kowalski First Amended
Complaint at ¶¶ 14-15, ECF No. 6; attached as Ex. A to Pla.'s
First Amended Complaint, ECF No. 39-1).

The First Amended Complaint in the Underlying Suit
claimed, "Defendants [Anova LLC's] use of such words, product
and process descriptions, product labels and packaging,
advertising, etc., constitute a misappropriation or
infringement of advertising ideas, style of doing business,

title and slogan, and also **disparagement of Plaintiffs, their products, their businesses**, and the '401 Patent and/or its processes." (<u>Id.</u> at ¶ 24) (emphasis added).

### 1.  The Disparagement Clause

Anova LLC argues that the Underlying Lawsuit's personal and advertising injury claims were covered based on the disparagement clause in the definition of "personal and advertising injury" stated in the Hanover Companies' insurance policies.

The disparagement clause in the Hanover Companies' insurance policies stated that there is insurance coverage for claims arising out of oral or written publication of material that disparages a person's or organization's goods, products or services.

A United States District Court in the Southern District of Florida recently applied Florida law to examine this exact clause.  <u>E.S.Y., Inc. v. Scottsdale Ins. Co.</u>, 139 F.Supp.3d 1341, 1353 (S.D. Fla. 2015).  The federal District Court found that personal and advertising injury claims are covered by the disparagement clause when the insured published material making a comparison of its products to a competitor and suggested that their competitor's product was inferior.  <u>Id.</u>

Pursuant to Florida law, a claim for personal and advertising injury is covered by the applicable disparagement clause even if the insured did not refer to the competitor's name specifically. Vector Products, Inc. v. Hartford Fire Ins. Co., 397 F.3d 1316, 1319 (11th Cir. 2005); see also E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co., 590 F.Supp.2d 1244, 1253 (N.D. Cal. 2008) (finding disparagement may be by implication and does not require the insured to name the competitor).

It is enough for the insured to compare its product or service to its competitor's product or service in order to detract from the reputation of its competitor. Vector Products, Inc., 397 F.3d at 1319; see Acme United Corp. v. St. Paul Fire & Marine Ins. Co., 214 Fed. Appx. 596, 600 (7th Cir. 2007) (finding that an advertisement that drew comparisons between its own product and a competitor's and asserted its own product was superior constituted a covered advertising injury claim).

Disparagement can also result from false comparisons between products in which the comparison dishonors the product being compared. E.S.Y., Inc., 139 F.Supp.3d at 1353 (citing Skylink Techs., Inc. v. Assurance Co. of Am., 400 F.3d 982,

985 (7th Cir. 2005) and <u>McNeilab, Inc. v. Am. Home Prods. Corp.</u>, 848 F.2d 34, 38 (2d Cir. 1988)).

The disparagement clause in the Hanover Companies' policies provided coverage for claims resulting from the publication of disparaging material. The publication of the disparaging material need not be an "advertisement". <u>Penzer v. Transportation Ins. Co.</u>, 29 So.3d 1000, 1006 (Fla. 2010) (interpreting an insurance policy's definition of "oral or written publication" broadly).

The insurance policies chose not to limit the disparagement clause to the publication of an "advertisement" but instead chose to include any oral or written publication of material that disparages a person's or organization's goods, products or services. Other clauses in the definition of "personal and advertising injury" are limited to the publication of advertisements, but the disparagement clause is not so limited. <u>See E.S.Y., Inc.</u>, 139 F.Supp.3d at 1353-56 (distinguishing between the material covered by the disparagement clause and the "advertising" covered in the advertising idea clause).

The differences in language are construed to be intentional as the insurer chose not to limit the disparagement clause to the advertisement definition. <u>St.</u>

28

Luke's Cataract and Laser Institute, P.A. v. Zurich, 506 Fed.
Appx. 970, 978 (11th Cir. 2013) (citing Davis v. Nationwide
Life Ins. Co., 450 So.2d 549, 550 (Fla. Dist. Ct. App. 1984)
("If an insurer intends to restrict coverage, it should use
language clearly stating its purpose").

The plain meaning of the policies controls the
interpretation of the disparagement clause.  Taurus Holdings,
Inc., 913 So.2d at 532; Vozzcom, Inc. v. Beazley Ins. Co.,
Inc., 666 F.Supp.2d 1321, 1328 (S.D. Fla. 2009).  The Court
may not rewrite a contract of insurance to extend or limit the
coverage afforded beyond that plainly set forth in the
insurance contract.  AAA Life Ins. Co. v. Nicolas, 603 So.2d
622, 623 (Fla. Dist. Ct. App. 1992).

> **2.   The Underlying Lawsuit's Claims for Personal and
>         Advertising Injury Were Covered by the
>         Disparagement Clause**

There is evidence upon which to have insurance coverage
in this case because Anova LLC made oral and written
publication of disparaging material about the Kowalski
Plaintiffs' products.  E.S.Y., Inc., 139 F.Supp.3d at 1353;
Foliar Nutrients, Inc. v. Nationwide Agribusiness Inc. Co.,
133 F.Supp.3d 1372, 1382-83 (M.D. Ga. 2015) (finding coverage
based on oral disparagement of a competitor).

In preparation for trial, the Kowalski Plaintiffs
provided evidence that they suffered personal or advertising
injuries based on disparagement caused by Anova LLC.  The
Kowalski Plaintiffs submitted evidence of Anova LLC's oral and
written publication of material that disparaged the fish and
meat products that were produced using the Kowalski
Plaintiffs' "tasteless smoke" process.

The evidence submitted by the Kowalski Plaintiffs
included oral and written communications that constituted
advertising and promotions made by Anova LLC to its customers.
Anova LLC used focused and directed oral and written
communications at trade shows and through e-mails to
wholesaler buyers in their specific market segments that
constituted commercial advertising or promotions.  E.S.Y.,
Inc., 139 F.Supp.3d at 1355-56; Mid-Continent Cas. Co. v. Kipp
Flores Architects, L.L.C., 602 Fed. Appx. 985, 994 (5th Cir.
2015); Copart, Inc. v. Travelers Ins. Co., 11 Fed. Appx. 815,
816-17 (9th Cir. 2001).

The lead Plaintiff in the Underlying Lawsuit, William R.
Kowalski, testified at his deposition for trial that Anova LLC
had disparaged his "tasteless smoke" products by claiming that
it had developed a superior process called "Clearsmoke."
Kowalski testified as follows:

Attorney:  When was the first time you complained to anyone at Anova about their advertising?

Kowalski:  Well, I believe that when I told Anova that I thought they were infringing, that they weren't really smoking the fish and taking the smoke out, that-the-would be, in my mind, a complaint about their advertising.

  **So because they're making verbal and written representations of their product that's not true, the customers wouldn't have bought the fish if they would have known the truth.**

Attorney:  How do you know that the customers would not have bought the fish?

Kowalski:  I believe they wouldn't have bought the fish because you have to make truthful representations.

  You can't make up some sort of a smokescreen that you're doing this, this, and that, when, really, that you're infringing on the – on my patent.
I don't believe that the customers would have bought product if they knew it was infringed and if they knew that the representations they made about the product were not true.

Attorney:  And those representations were what?

Kowalski:  We apply – we smoke the fish, apply smoke flavor.  We take it out with ozone.  **We get better shelf life.  The shelf life is longer than in Kowalski's fish because we leave more smoke in**

**the fish.  It makes it last longer.  It's better.**

(Deposition of William R. Kowalski at pp. 129-130, attached as Ex. 10 to Second Declaration of Darren Zobrist ("Zobrist Sec. Decl."), ECF No. 105-1) (emphasis added).

The documentary evidence that was submitted as trial exhibits in the Underlying Lawsuit supported the testimony of Mr. Kowalski.  There was evidence that wholesale customers were confused as to the purported differences between Anova LLC's "Clearsmoke" products and products that were made using Plaintiff Kowalski's "tasteless smoke".

The evidence included an e-mail dated April 11, 2013 from Toppits Foods Ltd to Anova LLC asking for it to "explain a bit more about your version of tasteless smoke to me." (E-mail to Anova LLC from Toppits Food Ltd dated April 11, 2013, attached as Ex. 11 to Zobrist Sec. Decl., ECF No. 105-2).  On April 12, 2013, Anova LLC responded stating the following,

> We have a unique Canadian patent for our "Clearsmoke" natural, purified wood smoke preservation process.  Our process is similar to the Sea Delight "tasteless smoke" patent with a few differences (enough to warrant our own patent).  The basis difference is with the way we filter our wood smoke and rinse our products with ozonated water after smoking.  This process minimizes oxidation during freezing and slows bacteria growth upon defrosting, **giving our products a much longer shelf life after thaw**.  I have attached a brochure with

32

additional details, and we will gladly answer any
questions during out meeting on May 2nd.[2]

(E-mail from Anova LLC to Toppits Foods Ltd date April
12, 2013, attached as Ex. 12 to Zobrist Sec. Decl., ECF No.
105-3) (emphasis added).

In an e-mail dated February 21, 2013, Anova LLC told
Empire Seafood that the "Clearsmoke" process was superior
because it used less than 30% of carbon monoxide while the
"tasteless smoke" process used 100% carbon monoxide. (E-mail
from Anova LLC to Empire Seafood, dated February 21, 2013,
attached as Ex. 13 to Zobrist Sec. Decl., ECF No. 105-3).

The Kowalski Plaintiffs provided evidence that Anova LLC
made other similar written representations that disparaged the
"tasteless smoke" process while claiming Anova LLC's products
using the "Clearsmoke" process were superior. (See E-mail
from Anova LLC to Sprouts Farmers Market dated March 26, 2014,
offering to make a full presentation regarding "Clearsmoke" in
response to questions about the differences between Anova
LLC's "natural wood smoke process" as opposed to the carbon
monoxide "tasteless smoke" products, attached as Ex. 15 to
Zobrist Sec. Decl., ECF No. 105-5).

---

[2] Sea Delight is a licensee of the Kowalski process.

The evidence provided by the Kowalski Plaintiffs in the Underlying Lawsuit supported its position that it suffered a personal or advertising injury that was caused by Anova LLC's disparagement. <u>Hyman</u>, 304 F.3d at 1192-93 (citing <u>R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.</u>, 287 F.3d 242, 248 (2d Cir. 2002)); <u>Limelight Productions, Inc. v. Limelite Studios, Inc.</u>, 60 F.3d 767, 769 (11th Cir. 1995) (finding insurance covered claim for Lanham Act damages).

The evidence demonstrated that the aforementioned personal or advertising injury claims asserted against Anova LLC fell within the definition of "personal and advertising injury" stated in the Hanover Companies' policies. <u>Spencer</u>, 39 F.3d at 1149; <u>see Tria Beauty, Inc. v. Nat'l Fire Ins. Co. of Hartford</u>, 2013 WL 2181649, *5-*6 (N.D. Cal. May 20, 2013).

## C.   The Kowalski Plaintiffs' Personal and Advertising Injury Claims Are Not Subject to the Exclusions Contained in the Insurance Policies

Under Florida law, the insurer has the burden to establish that a policy's exclusion applies. <u>U.S. Liab. Ins. Co. v. Bove</u>, 347 So.2d 678, 680 (Fla. Dist. Ct. App. 1977).

The Hanover Companies argue in their Opposition to Anova LLC's Motion for Summary Judgment that a number of the policies' exclusion provisions apply to bar Anova LLC from

34

coverage.  (The Hanover Companies' Opp. at pp. 24-29, ECF No. 123).

### 1.   The Intellectual Property Exclusion Does Not Apply

The Hanover Companies' policies contain an exclusion that states that personal and advertising injuries do not include any disparagement related to the actual or alleged infringement or violation of any intellectual property rights or laws.  (OneBeacon Primary Policy at p. 44, ECF No. 39-3; OneBeacon Umbrella Policy at p. 33, ECF No. 39-4).  The exclusion clause specifically stated that insurance does not apply to:

a.   The actual or alleged infringement or violation of any of the following:

(1)  trade dress;

(2)  trade name;

(3)  trade secrets;

(4)  trademark;

(5)  copyright; but this exclusion does not apply to infringement of copyrighted materials or slogans in your "advertisements"; or

(6)  any other intellectual property rights or laws.

(OneBeacon Primary Policy at p. 44, ECF No. 39-3;
OneBeacon Umbrella Policy at p. 33, ECF No. 39-4; see
Massachusetts Bay Policy at p. 36, ECF No. 39-5; Hanover
Policy at pp. 14-15, ECF No. 39-6).

The Hanover Companies assert that the personal and
advertising injury claims asserted in the Underlying Lawsuit
were related to and arising out of the Kowalski Plaintiffs'
patent infringement claims and should be excluded.

There is Florida case law supporting the conclusion that
the intellectual property exclusion does not apply when there
was an independent basis for the personal or advertising
injury claim to exist.  E.S.Y., Inc., 139 F.Supp.3d at 1358-
59; see Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins.
Co., 611 F.3d 339, 348 (7th Cir. 2010); see Citizens Ins. Co.
of Am. v. Uncommon, LLC, 812 F.Supp.2d 905, 911 (N.D. Ill.
2011).

The Hanover Companies' arguments based on Power Corp v.
Amerisure Ins. Co., 2013 WL 4523490, *5, *6 (M.D. Fla. Aug.
26, 2013) are unpersuasive.  In Power Corp., the false
advertising claims against the insured were intertwined with
the intellectual property infringement claim and did not have
a separate basis apart from the intellectual property claim.
The Power Corp. Court explained that the advertising claim was

"grounded on the alleged improper use of a trademark" that formed the basis of the trademark infringement claims.  Id.

In this case, the personal and advertising injury claims asserted in the Underlying Lawsuit were not dependent or necessarily related to the patent infringement claim and existed regardless of the patent infringement claim.

In the Underlying Litigation, the Court found that the personal and advertising injury claims were not simply disguised patent infringement claims.  (Order Denying Defendant Anova Food, LLC's Motion for Summary Judgment, ECF No. 432 in 11-cv-795HG-RLP).  The Court issued an Order finding that the Kowalski Plaintiffs' advertising claims were separate and distinct from the patent infringement claims and denied the Defendants' Motion for Summary Judgment. (Id. at pp. 51-53).

The Kowalski Plaintiffs based their personal and advertising injury claims on evidence that Anova LLC published material that disparaged the Kowalski Plaintiffs' "tasteless smoke" process.  The Kowalski Plaintiffs could have prevailed on their personal and advertising injury claims without prevailing on their patent infringement claims.

The claims were not intertwined because a jury could have determined that Anova LLC had not infringed on the Kowalski

37

Plaintiffs' patent but simultaneously found that Anova LLC disparaged the Kowalski Plaintiffs' "tasteless smoke" process while claiming that "Clearsmoke" was superior.  See Kia-Tencor Corp. v. Travelers Indem. Co. of Ill., 2003 WL 21655097, *5 (N.D. Cal. Apr. 11, 2003).

The intellectual property exclusion does not bar coverage in this case.  The intellectual property exclusion does not state that all suits that assert a simultaneous intellectual property claim would be excluded from coverage.  Such ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured.  Deni Assoc. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 771 So.2d 1135, 1138 (Fla. 1998).  Exclusionary clauses are construed even more strictly against the insurer than coverage clauses.  Hyman, 304 F.3d at 1196 (citing Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)).  The policies' intellectual property exclusion is not so plain and unambiguous to have put Anova LLC on notice that the policies would not cover personal and advertising injury claims in a lawsuit that also included a claim for intellectual property infringement.  Align Tech., Inc. v. Fed. Ins. Co., 673 F.Supp.2d 957, 969-970 (N.D. Cal. 2009).

The Hanover Companies have not established that the intellectual property exclusion contained in its policies precluded coverage.

### 2. The Failure of Goods to Conform Exclusion and the Knowledge of Falsity Exclusion Do Not Apply

The Hanover Companies' insurance policies exclude personal and advertising injuries arising out of the "failure of goods, products or services to conform with any statement of quality or performance made in your advertisement." The policies also exclude coverage for personal and advertising injuries arising out of oral or written publication of material done by or at the direction of the insured with knowledge of their falsity. (One Beacon Primary Policy at p. 10, ECF No. 39-3; OneBeacon Umbrella Policy at pp. 22-23, ECF No. 39-4; Massachusetts Bay Policy at p. 36, ECF No. 39-5; Hanover Policy at pp. 14-15, ECF No. 39-6).

Specific factual findings as to the quality of the goods or knowledge of the falsity of a statement are required in order to prove that these policy exclusions absolutely bar recovery. Adolfo House Distributing Corp. v. Travelers Prop. and Cas. Ins. Co., 165 F.Supp.2d 1332, 1340-1341 (S.D. Fla. 2001); Orlando Nightclub Enters., Inc. v. James River Ins. Co., 2007 WL 4247875, *5-*9 (M.D. Fla. Nov. 30, 2007).

39

No such findings were made either by a court order, verdict, judgment, or stipulation.  There were no findings in the Underlying Lawsuit that Anova LLC products did not conform to their statement of quality.  There were no findings as to Anova LLC's knowledge as to any false statements in their published materials.  Hyman, 304 F.3d at 1195-96; Lime Tree Village Comm. Club Assoc., Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1406-07 (11th Cir. 1993).

The Florida Supreme Court has explained that the insurance company has the burden of proving a policy exclusion applies and it must obtain a judgment from which it may be determined that there is no coverage.  U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1065 (Fla. 1983); Herrera v. C.A. Seguros Catatumbo, 844 So.2d 664, 668 (Fla. Dist. Ct. App. 2003) (finding that the insurer failed to establish facts that would have precluded coverage under the policy exclusion); Royal Oak, 344 F.Supp.2d at 1368.

The Hanover Companies did not provide any basis upon which the Court could find that the exclusion for failure of goods to conform or the exclusion for knowledge of false statements applies.

**3.    The Prior Publication Exclusion Does Not Apply**

The Hanover Companies argue that coverage is precluded because the first publication of material referring to the Clearsmoke process took place before the beginning of the applicable policies.  (The Hanover Companies' Opp. at p. 27, ECF No. 123).  The Hanover Companies misunderstand the exclusion.

First, courts applying Florida law have found that the first publication exclusion only applies to claims for slander, libel, and invasion of privacy.  <u>Adolfo House Distrib. Corp.</u>, 165 F.Supp.2d at 1342 (citing <u>Iron Home Builders Inc. v. Auto-Owners Ins. Co.</u>, 839 F.Supp. 1260, 1265 (E.D. Mich. 1993) (applying Florida law to find that the exclusion did not apply to the claims asserted against the insured)).

Second, even if the exclusion applies to other types of claims, the personal and advertising injury claims complained of in the Underlying Lawsuit were not simply related to publication of the term "Clearsmoke."  The personal and advertising injury claims in the Underlying Lawsuit asserted that Anova LLC published oral and written material that disparaged the Kowalski Plaintiffs' patented "tasteless smoke" process.  The Hanover Companies have not pointed to disparaging material published by Anova LLC that took place

41

before the July 1, 2010 effective date of the policies at issue.

The written evidence submitted by the Kowalski Plaintiffs was dated between February 2013 and March 2014, while the policies were in effect.  (E-mail dated February 21, 2013, attached as Ex. 13 to Zobrist Sec. Decl., ECF No. 105-3; E-mail dated April 12, 2013, attached as Ex. 12 to Zobrist Sec. Decl., ECF No. 105-3; E-mail dated March 26, 2014, attached as Ex. 15 to Zobrist Sec. Decl., ECF No. 105-5).

The Hanover Companies have not met their burden to establish that a policy exclusion applies to bar coverage as to the personal and advertising injury claims in the Underlying Lawsuit.

## III.    Allocation of the Claims in March 2015 Settlement

Pursuant to Florida law, the burden of allocating damages rests with the moving party seeking recovery when the underlying judgment included claims for which an insurer is liable and also claims which were beyond the coverage of the insurance policy.  Mid-Continent Cas. Co. v. Clean Seas Co., Inc., 860 F.Supp.2d 1318, 1323 (M.D. Fla. 2012) (citing Guarantee Ins. Co. v. Gulf Ins. Co., 628 F.Supp. 867, 870 (S.D. Fla. 1986)).

The Underlying Lawsuit included claims for patent infringement and personal and advertising injury claims.  The patent infringement claims were not covered by the Hanover Companies' insurance policies.  The personal and advertising injury claims were covered pursuant to the disparagement clause of the policies' definition of "personal and advertising injury."

In March 2015, Anova LLC and the Kowalski Plaintiffs in the Underlying Lawsuit entered into a settlement to dismiss the claims against Anova LLC for the events that occurred after July 1, 2010, during the effective period of the Hanover Companies' insurance policies.  Anova LLC and the Kowalski Plaintiffs signed a written document containing the terms of their March 2015 settlement.  (March 2015 Settlement Agreement and Release, attached as Ex. 9 to Zobrist Decl., ECF No. 75-9).

The Hanover Companies and Anova LLC each contributed the same amount of money to settle the claims against Anova LLC pursuant to the March 2015 Settlement Agreement.  (Letter from the Hanover Companies to Anova LLC dated April 1, 2015, Re: March 2015 Settlement, attached as Ex. 1 to Cruz Decl., ECF No. 98-1).   The Hanover Companies and Anova LLC have each

43

moved for summary judgment as to their contribution to the March 2015 settlement.

The party seeking recovery for money paid toward a settlement bears the burden to allocate damages between the claims covered by the insurance policy and the claims outside the insurance policy.  Keller Indus. Inc. v. Employers Mutual Liability Ins. Co. of Wisconsin, 429 So.2d 779, 780 (Fla. Dist. Ct. App. 1983); Metro. Dade Cnty v. Fla. Aviation Fueling Co., Inc., 578 So.2d 296, 298 (Fla. Dist. Ct. App. 1991) (per curiam); Am. Cas. Co. of Reading Pa. v. Health Care Indem., Inc., 613 F.Supp.2d 1310, 1320 (M.D. Fla. 2009).

The March 2015 Settlement Agreement provided for a lump sum settlement payment and did not apportion the payment between the patent infringement claims and the personal and advertising injury claims.  (March 2015 Settlement Agreement and Release, attached as Ex. 9 to Zobrist Decl., ECF No. 75-9).

Both the Hanover Companies and Anova LLC have the burden on their respective Motions for Summary Judgment to allocate damages between the covered and the non-covered claims pursuant to the March 2015 Settlement Agreement.  Neither party has provided the Court with a reliable framework for apportioning damages, which is fatal to their claims.

44

<u>Trovillion Const. & Dev., Inc. V. Mid-Continent Cas. Co.</u>, 2014 WL 201678, *9 (M.D. Fla. Jan. 17, 2014); <u>Association for Retarded Citizens, Dade Cnty., Inc. v. State of Florida Dept. of Health and Rehabilitative Services</u>, 619 So.2d 452, 454 (Fla. Dist. Ct. App. 1993) (citing <u>Dionese v. City of West Palm Beach</u>, 500 So.2d 1347, 1351 (Fla. 1987) (the language contained in the settlement agreement determines post-settlement apportionment)).

In the Underlying Lawsuit, on December 31, 2014, the Court issued an Order Denying Defendant Anova Food, LLC's Two Motions to Strike, and Denying Defendant Anova Food, LLC's Motion for Summary Judgment, and Granting, in part, and Denying, in part, the Kowalski Plaintiffs' Counter Motion for Partial Summary Judgment.  (ECF No. 432 in 11-cv-00795HG-RLP).


On January 23, 2015 and February 11, 2015, the Court held its Final Pretrial Conference and ruled on twenty-three of the Parties' Motions in Limine.  (ECF Nos. 548, 581, 585, 586, 587, 588, and 603 in 11-cv-00795HG-RLP).

On February 27, 2015, the Court held a hearing on Objections to Evidence, Jury Instructions, and Witnesses. (ECF No. 628  in 11-cv-00795HG-RLP).  Trial was set to begin on March 3, 2015.

45

On the morning of March 3, 2015, the day trial was scheduled to begin, the case settled before the jury convened. (ECF No. 633 in 11-cv-00795HG-RLP).  The Parties held a settlement on the record.  (Id.)  The Parties now seek to re-litigate the case in the Underlying Lawsuit because they did not apportion liability for the various claims in their settlement documents.

The Parties have not provided any authority that would allow them to re-litigate the case that they chose to settle on the day of trial.  Both the Hanover Companies and Anova LLC had the opportunity to prepare their March 2015 Settlement Agreement to include apportionment between the patent infringement and false advertising claims but both Parties declined to do so.  Limelight Productions, Inc., 60 F.3d at 769; see Gallagher v. Dupont, 918 So.2d 342, 348 (Fla. Dist. Ct. App. 2005).

The Hanover Companies provided defense counsel to Anova LLC.  Anova LLC, however, was apprised of the divergence of interest between the insurer and itself.  Each party contributed to the settlement amount.  The Hanover Companies informed Anova LLC that its contribution was subject to a reservation of its rights to seek reimbursement but no action was taken by either Party as to their belief as to

46

apportionment.  See Arnett v. Mid-Continent Cas. Co., 2010 WL 2821981, *5 (M.D. Fla. July 16, 2010) (citing Duke v. Hoch, 468 F.2d 973, 979-80 (5th Cir. 1973)).

Both the Hanover Companies and Anova LLC are unable to recovery any money contributed to the March 2015 Settlement. Their failure to apportion the settlement amounts between covered and non-covered claims precludes recovery for indemnification.  Guarantee Ins. Co. v. Gulf Ins. Co., 628 F.Supp. 867, 870-871 (S.D. Fla. 1986) (citing Jones v. Holiday Inns, Inc., 407 So.2d 1032, 1034 (Fla. Dist. Ct. App. 1981)); Universal Underwriters Ins. Corp. v. Reynolds, 129 So.2d 689, 691 (Fla. Dist. Ct. App. 1961); Am. Cas. Co. of Reading Penns., 613 F.Supp.2d at 1321.

The Hanover Companies also seek recovery of the attorneys' fees it provided in the Underlying Lawsuit.  The Court already ruled that they had a duty to defend Anova LLC for the entire suit and they are not able to apportion the fees for recovery.  Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. Dist. Ct. App. 1992); Certain Interested Underwriters at Lloyd's London v. Halikoytakis, 556 Fed. Appx. 932, 933 (11th Cir. 2014) (per curiam).

The Hanover Companies' Motion for Summary Judgment (ECF No. 97) is **DENIED**.

47

The Hanover Companies are not entitled to recover the money they contributed to the March 2015 Settlement Agreement from Anova LLC.

Anova LLC's Motion for Partial Summary Judgment seeking to recover the money it contributed to the March 2015 Settlement Agreement is **DENIED**.

Anova LLC is not entitled to recover the money it contributed to the March 2015 Settlement Agreement from the Hanover Companies.

## IV.   Anova LLC's Counterclaim for Attorneys' Fees

Anova LLC seeks summary judgment against the Hanover Companies on its Breach of Contract claim as stated in Count I of its Counterclaim.   Anova LLC claims the Hanover Companies breached the insurance contract because it did not pay for all of the attorneys' fees incurred by the Zobrist law firm for defending Anova LLC in the Underlying Lawsuit.

Florida law provides that it is possible for an insurance company to provide a defense under a reservation of rights without breaching its contract.   Petro v. Travelers Cas. and Sur. Co. of America, 54 F.Supp.3d 1295, 1303 (N.D. Fla. 2014) (citing Mid-Continent Cas. Co. v. American Pride Bldg. Co., LLC, 601 F.3d 1143, 1149 (11th Cir. 2010)).

48

The Hanover Companies' December 13, 2012 reservation of rights letter did not constitute a breach of contract.  <u>Royal Oak Enters., Inc.</u>, 344 F.Supp.2d at 1371.  The Hanover Companies offered to provide a defense to Anova LLC in its December 13, 2012 reservation of rights letter.  In the letter, the Hanover Companies agreed to hire Attorney Gary Grimmer to provide a defense to Anova LLC.  Anova LLC did not reject the defense provided by the Hanover Companies.  <u>Western Heritage Ins. Co. v. Montana</u>, 30 F.Supp.3d 1366, 1372 (M.D. Fla. 2014).

The Parties agreed that Attorney Grimmer would be assisted by the Zobrist law firm, and that the Zobrist law firm would appear as counsel of record in the Underlying Lawsuit.  (Marshall Decl. at ¶¶ 16-35, ECF No. 104; Declaration of Stephen E. Colville at ¶ 5, ECF No. 123-1).

The Hanover Companies owe the Zobrist law firm all reasonable attorneys' fees incurred by the Zobrist law firm between October 12, 2012, when Anova LLC requested a defense from the Hanover Companies until December 10, 2013, when the Hanover Companies decided to provide different counsel to Anova LLC.

The Hanover Companies accepted the billing rates for the Zobrist law firm and paid some of the Zobrist law firm's fees

incurred between October 12, 2012 and December 10, 2013. (Marshall Decl. at ¶¶ 16, 33, ECF No. 104; see e-mails and print-outs regarding the Hanover Companies' acceptance of billing rates for the Zobrist law firm, attached as Exs. 1, 2, 3 to the Marshall Decl., ECF No. 104-1—104-3).

The record reflects that the Zobrist law firm provided an invoice to the Hanover Companies on June 30, 2013 for billings between October 11, 2012 and June 30, 2013.  (Bill Analysis Report attached as Ex. 5 to Anova LLC's CSF, ECF No. 104-5).

There is no indication on any of the bill analysis reports that the Hanover Companies intended to pay the Zobrist law firm for a limited purpose as now contended by the Hanover Companies in their Opposition.  The notations made by the Hanover Companies in the bill analysis reports demonstrate that the Hanover Companies intended to pay fees for the Zobrist law firm in the future, and not for one specified, limited purpose.  (Bill Analysis Reports attached as Exs. 5, 6, 7, 8, and 9, to Anova LLC's CSF, ECF Nos. 104-5—9).

Anova LLC submitted correspondence between the Zobrist law firm and the Hanover Companies from October 2013, concerning billing practices and billing rates.  (E-mails between the Zobrist Law Group and Hanover Insurance Group's Legal Ebilling Coordinator, attached as Ex. 1 to Anova LLC's

CSF, ECF No. 104-1). The e-mails do not indicate that the Zobrist law firm was representing Anova LLC for a limited purpose, for a limited duration, or for limited work.

In November 2013, counsel for the Hanover Companies informed counsel for Anova LLC that it was looking into changing the representation for Anova LLC in the Underlying Lawsuit. (E-mails between Steve Rawls and John Neeleman dated November 12 and November 19, 2013, attached as Ex. C-1 to the Neeleman Decl. in Anova LLC's Opp., ECF No. 131-3).

Anova LLC responded to the Hanover Companies that it "desire[d] **that Zobrist Law Group remain as lead counsel**." (Id. at p. 2) (emphasis added). The Hanover Companies at no time throughout the correspondence asserted that the Zobrist law firm was not acting as counsel for Anova LLC in the Underlying Lawsuit.

On December 10, 2013, the Hanover Companies sent a letter to Anova LLC informing it that they decided to change counsel for Anova LLC in the Underlying Lawsuit. (Letter from Hanover Regional Liability Adjuster Stephen E. Colville, dated December 10, 2013, attached as Ex. 5 to Zobrist Decl. at pp. 4-5, ECF No. 75-5).

In the December 10, 2013 Letter, the Hanover Companies informed Anova LLC that Anova LLC would be responsible for

51

payment of attorneys' fees for the Zobrist law firm to
continue in the case.  (Id.)

As of December 10, 2013, Anova LLC was no longer entitled
to have attorneys' fees paid for by the Hanover Companies to
Attorney Gary Grimmer and the Zobrist law firm following the
Hanover Companies' letter.

An insured may retain its own counsel and recoup
reasonable attorneys' fees from the insurer if the defense
provided by the insurer is not adequate.  Maronda Homes, Inc.
of Fla. v. Progressive Exp. Ins. Co., 118 F.Supp.3d 1332, 1335
(M.D. Fla. 2015) (citing Carrousel Concessions, Inc. v. Fla.
Ins. Guar. Ass'n, 483 So.2d 513, 517 (Fla. Dist. Ct. App.
1986)).

There is no evidence that the attorneys provided by the
Hanover Companies after December 10, 2013 were inadequate and
therefore Anova LLC was forced to retain separate counsel.
Royal Oak Enterprises, Inc., 344 F.Supp.2d at 1369.

Following the change of counsel, the Parties continued to
correspond regarding the money owed to the Zobrist law firm.
The Hanover Companies paid a lump sum to the Zobrist law firm
in January 2014, but stated that the rest of the payment would
be made following an audit of the invoices.  (E-mails between
counsel for the Hanover Companies and counsel for Anova LLC

52

dated February 9 and 23 of 2014 and January 2, 3, and 22 of
2014, attached as Ex. B-1 to the Neeleman Decl. in Anova LLC's
Opp., ECF No. 131-2).

Nowhere in the correspondence between the Hanover
Companies, the Zobrist law firm, and Anova LLC did the Hanover
Companies assert that the Zobrist law firm was not owed
attorneys' fees because they were not approved as defense
counsel for Anova LLC in the Underlying Lawsuit.  Instead, the
Hanover Companies asserted that the invoices needed to be re-
submitted.  (Id. at pp. 1-2).

In an e-mail dated January 2, 2014, counsel for the
Hanover Companies stated,

> [W]ith respect to the Zobrist Law Group's invoices,
> Mass Bay/Hanover has already made a $50,000.00
> payment.  The invoices submitted were rejected
> because the entries did not contain sufficient
> detail, were block billed and not in compliance with
> any generally accepted billing practice.  **Please
> have the Zobrist Law Group resubmit its invoices
> with sufficient detail and without block billing
> entries for Mass Bay/Hanover to review.**

(E-mail from Scott A. Markowitz to John Neeleman dated
January 2, 2014, attached as Ex. A-1 to Neeleman Decl. in
Anova LLC's Opp., ECF No. 131-1) (emphasis added).

In its Opposition to Anova LLC's Motion for Partial
Summary Judgment, the Hanover Companies submitted an affidavit
from Stephen E. Colville, Regional Liability Adjuster for the

53

Hanover Companies.   (Declaration of Stephen E. Colville dated
April 11, 2016, attached as Ex. 1 to the Hanover Companies'
Opp., ECF No. 123-1).   In the Declaration dated April 11,
2016, Colville stated that it was the Hanover Companies'
understanding that it was only being asked to agree to pay
certain fees of the Zobrist law firm and that it did not agree
to assign the Zobrist law firm as defense counsel.   (Id. at ¶¶
5-6).   There is nothing in the record to support this
statement.

All of the correspondence that occurred at the time of
the Underlying Lawsuit between the Hanover Companies, the
Zobrist law firm, and Anova LLC reflects that the Hanover
Companies agreed that the Zobrist law firm was counsel of
record for Anova LLC and that the Hanover Companies agreed to
pay the attorneys' fees incurred by the Zobrist law firm
between October 12, 2012 and December 10, 2013.

The Hanover Companies did not refute Anova LLC's
assertion that the Zobrist law firm served as part of the
defense team.   Nor did the Hanover Companies' correspondence
ever assert that the Zobrist law firm was not owed additional
fees.

Instead, the Hanover Companies agreed that the Zobrist
law firm was owed attorneys' fees and the Hanover Companies

merely contested the form and manner of the firm's invoices. (E-mail from Scott A. Markowitz to John Neeleman dated January 2, 2014, attached as Ex. A-1 to Neeleman Decl. in Anova LLC's Opp., ECF No. 131-1; E-mails between counsel for the Hanover Companies and counsel for Anova LLC dated February 9 and 23 of 2014 and January 2, 3, and 22 of 2014, attached as Ex. B-1 to the Neeleman Decl. in Anova LLC's Opp., ECF No. 131-2; E-mails between Steve Rawls and John Neeleman dated November 12 and November 19, 2013, attached as Ex. C-1 to the Neeleman Decl. in Anova LLC's Opp., ECF No. 131-3)

Anova LLC's Motion for Partial Summary Judgment as to its Counterclaim for Breach of Contract is **GRANTED, IN PART, and DENIED IN PART.**

The Hanover Companies are required to pay reasonable attorneys' fees incurred by the Zobrist law firm in defending Anova LLC in the Underlying Lawsuit between October 12, 2012 and December 10, 2013.

## V.   Anova LLC's Counterclaim for Bad Faith

The last remaining claim in the lawsuit is Count II for Bad Faith in Anova LLC's Counterclaim against the Hanover Companies.  Anova LLC has not pled bad faith with particularity and the Motions for Summary Judgment do not

address the bad faith claim.  The Court addresses Anova LLC's bad faith claim as it appears that it is unable to prevail on such a claim.

Pursuant to Florida law, there are two types of bad faith claims brought against an insurer: a first-party bad faith claim and a third-party bad faith claim.  A first-party bad faith claim is brought by an insured against its insurer for alleged bad faith in settlement with its own claim.  <u>Opperman v. Nationwide Mut. Fire Ins. Co.</u>, 515 So.2d 263, 266 (Fla. Dist. Ct. App. 1987).  A first-party bad faith claim is not found at common law and is permitted pursuant to Florida statute, Fla. Stat. § 624.155(1)(b). <u>Id.</u>

Anova LLC does not appear to have brought a first-party bad faith claim as it did not comply with the required Florida statute for bringing such a claim.  <u>Talat Enters., Inc. v. Aetna Cas. And Sur. Co.</u>, 753 So.2d 1278, 1283 (Fla. 2000) (finding Fla. Stat. § 624.155 is the exclusive remedy for first-party bad faith claims, but such claims are barred unless written notice is provided to the Florida Department of Insurance and to the insurer as conditions precedent to filing an action, Fla. Stat. § 624.155(3)).

A third-party bad faith cause of action seeks to remedy a situation where a third-party sued the insured and the insured

56

is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim.  <u>Marcola v. Gov't Emps. Ins. Co.</u>, 953 So.2d 451, 455 (Fla. 2006).  The Underlying Lawsuit was settled and there was no excess judgment entered against Anova LLC.  <u>Perera v. U.S. Fidelity and Guar. Co.</u>, 35 So.3d 893, 904 (Fla. 2010); <u>Marcola</u>, 953 So.2d at 458 ("where the underlying tort action against the insured no longer exists...the cause of action for third-party bad faith no longer exists").

Anova LLC has not demonstrated any causal connection between the actions of the Hanover Companies and any damages incurred in the settlement of the Underlying Lawsuit. <u>Messinese v. USAA Cas. Inc. Co.</u>, 622 Fed. Appx. 835, 838 (11th Cir. 2015) (a valid bad-faith claim must show a causal connection between the damages claimed and the insurer's purported bad faith).

The Court points out to Anova LLC that it appears that Anova LLC may be unable to proceed on a bad faith claim as a matter of law.  There are no other outstanding claims remaining in this action.

## CONCLUSION

All claims against Anova Inc. are **DISMISSED WITH PREJUDICE**.

The Hanover Companies' Motion for Summary Judgment (ECF No. 97) is **DENIED**.

Anova LLC's Motion for Partial Summary Judgment (ECF No. 101) is **GRANTED, IN PART, and DENIED IN PART**.

The Hanover Companies are not entitled to recover any attorneys' fees from Anova LLC.

The Hanover Companies' insurance polices covered Anova LLC for the personal and advertising injury claims asserted in the Underlying Lawsuit.

The March 2015 settlement pertaining to Anova LLC included both covered and non-covered claims.  Neither the Hanover Companies nor Anova LLC are entitled to recover their contributions to the March 2015 settlement in the Underlying Lawsuit.

The Hanover Companies are required to pay reasonable attorneys' fees incurred by the Zobrist law firm in defending Anova LLC in the Underlying Lawsuit between October 12, 2012 and December 10, 2013.

The only other remaining claim before the Court is Anova LLC's bad faith claim.

IT IS SO ORDERED.

DATED:    June 29, 2016, Honolulu, Hawaii.

_____
Helen Gillmor
United States District Judge

The Hanover Insurance Company; Massachusetts Bay Insurance Company v. Anova Food, Inc.; Anova Food, LLC; Counterclaimants Anova Food, LLC; Anova Food, Inc. v. Counter-Defendants The Hanover Insurance Company; Massachusetts Bay Insurance Company; Civ. No. 14-00281HG-RLP; **ORDER DISMISSING ALL CLAIMS AGAINST DEFENDANT ANOVA FOOD, INC. and ORDER DENYING PLAINTIFFS THE HANOVER INSURANCE COMPANY AND MASSACHUSETTS BAY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 97) and GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT ANOVA FOOD LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 101)**

59